Emily Moody **BOYD**, Administratrix of the Estate of Clyde Alva Boyd, III, and Emily Moody Boyd, Individually, Plaintiff,

v.

**UNITED STATES of America, ex rel. the UNITED STATES ARMY CORPS OF ENGINEERS**, Defendant.

No. 78496.

Supreme Court of Oklahoma.

April 28, 1992.

Harry Scoufos, P.C., Sallisaw, Glen D. Johnson, Okemah, for plaintiff.

John Raley, U.S. Atty., Bruce Green, Asst. U.S. Atty., Muskogee, for U.S.

SUMMERS, Justice.

The U.S. District Court for the Eastern District of Oklahoma, pursuant to 20 O.S. 1981 §§ 1601–1611, submitted to us a certified question which it states will determine a matter there pending, and which is not presently answered by the decisions of the Oklahoma Supreme Court. The question is whether Oklahoma's Recreational Use Act, 2 O.S.1981 § 1301–315, applies in this case to afford immunity to the Defendant United States. We conclude that it does not.

Tenkiller Ferry Lake is under the jurisdiction and control of the United States through the Army Corps of Engineers (Corps or COE). The lake consists of some 12,500 acres of water with 130 miles of shoreline. It is abutted by several parks, some operated by the Corps and some operated by the State of Oklahoma. Tenkiller State Park is approximately 1,180 acres of Government-owned land leased by the

State of Oklahoma from the U.S. Corps of Engineers for an annual fee of $1.00. The State then subleases, for commercial concessions, such operations as a general store, restaurants, cabins, and marinas in certain areas of Tenkiller State Park. There is free public access to much of Tenkiller State Park, and it is by this means that the deceased entered "Area B" of the Park, from which he entered the lake. The Corps also leases areas abutting the lake for the purpose of commercial concessions (such as marinas) and the Corps receives an annual rent on marinas, with an additional graduated rent based on a percentage of income from sales and services dependent upon the assets of the marinas. The Corps is authorized to collect camping fees, concession rental fees, and special event permit fees for such activities as fishing tournaments, boat races, parasailing, and dog trials. The State of Oklahoma collects fees for camping hookups in Tenkiller State Park, but there are none in "Area B". None of the revenues collected by the State from their leased park operations are remitted to the United States. The amount of revenue received by the United States from its Corps-operated, commercial ventures is not reported.

▋ Clyde Alvin Boyd III, an Oklahoma attorney, was swimming and snorkeling in Lake Tenkiller on Labor Day, 1982, when he was struck and killed by a motorboat. The accident occurred approximately twenty-five feet offshore from "Area B", a part of Tenkiller State Park. The material before us does not show the dimensions nor size of "Area B". The boat that struck Boyd was not owned or operated by the United States or any of its employees, but by a third party engaged in a recreational pursuit. Boyd's widow as personal representative filed suit against the United States under the Federal Tort Claims Act.[1] She alleged that the Corps of Engineers failed to warn swimmers that boats were permitted in the area, or in the alternative, that the Corps was negligent in managing the area so as to not restrict the entry of

boats and to allow multiple competing uses in the same part of the lake.

The Oklahoma statute we are requested to construe states:

§ 1301–315 Limitation on liability of persons making available to public certain areas for recreational purposes without charge.

A. The purpose of this section is to encourage persons to make available to the public land, water areas and park areas for outdoor recreational purposes by limiting their liability to persons going thereon and to third persons who may be damaged by the acts or omissions of persons going thereon.

B. An owner or lessee who provides the public with a park area for outdoor recreational purposes owes no duty of care to keep that park area safe for entry or use by others, or to give warning to persons entering or going on that park area of any hazardous conditions, structures or activities thereon. An owner or lessee who provides the public with a park area for outdoor recreational purposes shall not by providing that park area:

1. Be presumed to extend any assurance that such park area is safe for any purpose;

2. Incur any duty of care toward a person who goes on the park area; or

3. Become liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on that park area.

C. *This section shall not apply if there is any charge made or usually made by entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area, or any part thereof.*

D. An owner of land or water area leased to the state for outdoor recreational purposes owes no duty of care to keep that land or water area safe for entry or use by others, or to give warning to persons entering or going on that

---

**1.** The Federal Tort Claims Act is controlled by the law of the state. *Richards v. United States,* 369 U.S. 1, 16, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), (Court applied Oklahoma law in a Federal Tort Claims action to determine existence of a cause of action).

land or water of any hazardous conditions, structures, or activities thereon. Any owner who leases land or water area to the state for outdoor recreational purposes shall not by giving such lease:

1. Be presumed to extend any assurance that such land or water area is safe for any purpose;

2. Incur any duty of care toward a person who goes on the leased land or water area; or

3. Become liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the leased land or water area. The forgoing applies whether the person going on the leased land or water area is an invitee, licensee, trespasser or otherwise.

E. This act does not relieve any person of liability which would otherwise exist for want of ordinary care or for deliberate, willful or malicious injury to persons or property. The provisions hereof shall not be deemed to create or increase the liability of any person.

F. The term outdoor recreational purposes as used in this act shall include, but not necessarily be limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing and visiting historical, archaeological, scenic or scientific sites.

(Emphasis added in statement furnished by Federal Court.)

 The Federal trial judge sustained Defendant's motion to dismiss. Plaintiff appealed and the suit was remanded by the United States Court of Appeals for the Tenth Circuit back to the District Court for interpretation of this statute. *Boyd v. United States ex rel. U.S. Army Corps of Engineers*, 881 F.2d 895, 899 (10th Cir. 1989). The Circuit Court said:

This statute apparently has not been construed by the Oklahoma courts, but it is more narrowly drawn than the model recreational use statute Kansas adopted

and we construed in *Klepper* [v. *City of Milford*, 825 F.2d 1440 (10th Cir.1987)]. Because the government concedes that the water area of the park was not leased to the state, Supplemental Brief of Appellee at 14, and the death occurred offshore, subsection D does not apply here. Thus, this leaves subsections B and C for our consideration.

The government asserts that it receives no monies from the State of Oklahoma for the lease of the park "nor does the United States *operate* any commercial activities for profit on the lake." *Id.* at Exh. A p. 1 (emphasis added). Boyd, however, asserts that the COE "receives a percentage of gross sales from many concessionaires and charges various fees to lake users." Appellant's Reply to Supplemental Brief of Appellee at 2. We believe a development of the facts is necessary to a resolution of this issue. *If indeed the COE charges lake user fees or receives some revenue from commercial activities on the areas controlled by the COE, subsection C clearly applies to knock out the immunity provided by subsection B.* This may not be the only construction of which the statute is susceptible that could subject the United States to potential liability. *Cf., e.g., Ducey* [v. *United States*] 713 F.2d [504] at 509–15 [ (9th Cir.1983) ]. Thus, on remand we direct the district court to consider and resolve whether the United States is protected from liability by the Oklahoma Statute. (Emphasis ours.)

It is now our job to determine if the state statute protects the federal government from liability or if its immunity is "knock[ed] out" by Subsection C.[2]

This section provides that an owner or lessee who provides the public with a park area shall not be liable (absent deliberate, wilful, or malicious misconduct) for statutorily specified injuries to members of the

---

2. The parties appear in agreement that the liability of the United States under the Federal Tort Claims Act is the same as that of a *private individual* under the laws of the State of Oklahoma. *See Cox v. United States,* 881 F.2d 893, 895 (10th Cir.1989), (if a private person is shielded from liability under Oklahoma's Recreational Use Statute then the United States is also shielded).

public using the park area. Subsection C of this section provides that this exemption from liability shall not apply, however, "if any commercial or other activity for profit is conducted on such park area or any part thereof." The exemption from liability is thus withdrawn when commercial activity occurs in the "park area or any part thereof." Some of the materials before us discuss "areas" within Tenkiller State Park and the lake, and whether the particular area of the accident contains commercial activities. We are told, for example, that no commercial activity occurs within "Area B". Whether the proprietor of a park labels certain locations within that park as "Area A", "Area B", or "Area C" is unimportant, however, as those designations are not synonymous with the statutory term "park area" in § 1301–315.

The term "park area" is not defined in § 1301–315, but is described therein as that which is provided by the owner or lessee to the public for outdoor recreational purposes. § 1301–315(B). In our case the area provided by the Corps for outdoor recreational purposes is the "park area". "Park area" as thus used is distinguished from "public land" and "water areas" in Subsection A. In *Walton v. Donnelly*, 201 P. 367, 370 (Okla.1921), we explained that a term is given the same meaning throughout a statute unless the contrary clearly appears from the whole statute.

Utilizing this meaning, it is clear that the immunity from liability is withdrawn if commercial activity occurs on the park or any part thereof. The record before us plainly shows that commercial activity takes place in COE controlled areas abutting the lake, and that the COE receives revenue from these operations. It is equally clear that commercial activity (store, marina, restaurants, cabins) occurs within Tenkiller State Park. Thus, 2 O.S.1981 § 1301–315 provides the federal government with no exemption from liability in this case.[3]

A different result was reached in *Kleer v. United States*, 761 F.2d 1492 (11th Cir. 1985). In that case the court stated that a "park area" is "something less that the entire parcel of land." *Id.* 761 F.2d at 1495. We disagree.[4] The defendant United States cites this case and relies on the fact that no commercial activity occurred "in the waters of Tenkiller Ferry Lake" and that no commercial activity occurred in "Area B". This argument is consistent with *Kleer* but at odds with the statute. The defendant's interpretation of *Kleer* and the statute allows an owner or lessee who provides a park to unilaterally "subdivide" the park into the smallest parcels imaginable, name each subdivision as a different "park area", and thereby make the language of subsection "C" meaningless.

We hold that under the facts as certified the United States of America would not have immunity under 2 O.S.1981 § 1301–315. Certified Question Answered.

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and KAUGER, JJ., concur.

OPALA, C.J., and ALMA WILSON, J., concur in part, dissent in part.

**3.** Although Tenkiller State Park is under the control of the State of Oklahoma we are not called upon to construe the applicability of 2 O.S.1981 § 1301–315 to the State of Oklahoma and its subdivisions as defendants. Our ruling does *not* reach that issue. *But see Klepper v. City of Milford, Kansas*, 825 F.2d 1440, 1444 n. 4, 1444–1445 n. 5 (10th Cir.1987) wherein the court notes a division of authority on the issue of whether political subdivisions of the state are covered by the Recreational Use Statute. See also *Ewell v. United States*, 776 F.2d 246 (10th Cir.1985), a case involving the Utah Limitation of Landowner Liability Act, in that regard.

**4.** We note that our construction of subsection C is similar to that expressed by the Tenth Circuit in *Boyd v. United States ex rel. U.S. Army Corps of Engineers, supra* at p. 899.