2003 OK 43

Robin MUSTAIN, Plaintiff/Appellant,

v.

GRAND RIVER DAM AUTHORITY
and David Harris Grandin,
Defendant/Appellees.

No. 96,056.

Supreme Court of Oklahoma.

April 22, 2003.

As Corrected April 23, 2003.

As Corrected May 7, 2003.

Robert Bell, Norman, and James T. Thompson, Edleman & Thompson, Kansas City, MO, for appellant.

Robert A. Franden, Jody R. Nathan, Feldman, Franden, Woodard Farris & Boudreaux, Tulsa, and Allen B. Pease, General Counsel, Grand River Dam Authority, Vinita, for appellees.[1]

OPALA, V.C.J.

¶ 1 The certiorari quest presses for our decision two questions: (1) Does the Grand River Dam Authority's collection of commercial–and private–dock permit fees and miscellaneous rents constitute "commercial activity" which would except it from the immunity otherwise extended by the Recreational Land Use Act? (2) Does the Governmental Tort Claims Act's protection extend to the Grand River Dam Authority? We answer the first question in the negative and the second in the affirmative.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 Robin Mustain (plaintiff/appellant) sustained severe bodily injuries when the personal water craft (water craft [2]) on which she was a passenger struck a support structure of an abandoned railroad bridge situated in the main channel of Grand Lake. The accident occurred at approximately 8:45 p.m. on July 12, 1998. Mustain was one of three individuals aboard the craft operated by David Grandin. According to witnesses, Grandin was piloting the water craft, weaving it back and forth between the support columns of an abandoned railroad bridge at dusk, when he struck a concrete cross-bar which spanned the distance between two vertical support structures. The cross-bar stood approximately three-and-a-half feet above the water. As a result of the accident the other passenger was killed. Mustain and Grandin sustained serious injuries.

¶ 3 The bridge at issue in today's controversy is over ninety-five years old. It was left uncompleted when a dam was built to impound the waters of the Grand River to create a source for producing hydroelectric power. The bridge and portions of the support structure (including the cross bar which was struck) were visible above the water line. The structure bore no markings or warnings. Mustain produced an affidavit from a maritime safety expert which states the bridge structure constitutes a navigational hazard and should have been marked and lighted in accordance with federal regulations. She also relied on evidentiary material to show that the Authority generated miscellaneous rent income attributable to its operation of the lake and permit fees for commercial and private docks on the lake. Mustain does not claim nor did she produce probative material to show that she or Grandin were charged a fee for using the lake or that the Authority

---

1. Identified herein are only those counsel of the parties whose names appear on certiorari briefs.

2. Personal water crafts are commonly called "jet skis."

charges user fees. The Authority contends it is prohibited from charging such fees.[3]

¶4 Mustain seeks recovery from Grandin,[4] operator of the water craft, and from the Grand River Dam Authority (Authority), who owns and operates the lake. She bases her first theory of recovery on what we will refer to as the "commercial-activity exception" to the immunity otherwise afforded the Authority by the Recreational Land Use Act (RLUA).[5] Her petition alleges the Authority, despite having actual knowledge of the dangers posed by the bridge and notice of defects associated with the structure, consciously chose to disregard these dangers and refused to take steps to rectify the alleged dangerous condition or provide warnings of the danger. These actions, she asserts, constitute "deliberate, willful or ma-

licious" conduct as this phrase is used in § 1301–315(E)[6] and operate to strip the Authority of the protection otherwise afforded by the RLUA.

¶5 The Authority moved to dismiss the action claiming (1) the suit is time-barred by the statute of repose,[7] (2) the Authority's collection of commercial- and private–dock permit fees and miscellaneous rents does not constitute "commercial activity" within the meaning of the RLUA and hence it is not stripped of its immunity shield, and (3) the Authority's conduct does not rise to the level of deliberate, willful, or malicious and hence its actions do not deprive it of the RLUA's protection;[8] but even if they did, the provisions of the Governmental Tort Claims Act (GTCA)[9] apply here to exempt it from civil liability.

3. The Authority cites to the pertinent terms of enabling legislation, 82 O.S.1991 § 875(B), which provide "no charge shall ever be made to the public right to engage in hunting, fishing, boating or swimming in said lakes." (textual abbreviation supplied)

4. Today's certiorari deals only with Mustain's claims against the Authority. Appellant also challenged on appeal the district court's ruling denying her request for additional time for discovery. COCA's opinion addressed this issue when it affirmed the nisi prius decision. Neither party raised it again on certiorari. An issue tendered and decided on appeal but not repressed by petition or counter-petition for certiorari *stands abandoned.* See the provisions of Rule 1.180(b), Supreme Court Rules, 12 O.S. 2001, Ch. 15, app.1. *Hough v. Leonard,* 1993 OK 112, ¶¶ 15–17, 867 P.2d 438, 445–56.

5. The purpose of the Recreational Land Use Act, as stated in 2 O.S.1991 § 1301–315(A), is to "encourage landowners and lessees to make available land, water areas, park areas and lake reservations for outdoor recreational purposes by limiting their liability to persons going upon ... these lands." (textual alteration supplied) The Act provides for two exceptions to its immunity provisions. The first is found in § 1301–315(C). It states:

C. This section shall not apply if there is any charge made or usually made by entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area, or any part thereof.

6. The second immunity exception expressed in 2 O.S.1991 § 1301–315(E) provides:

This act does not relieve any person of liability which would otherwise exist for want of ordi-

nary care or for deliberate, willful or malicious injury to persons or property. The provisions hereof shall not be deemed to create or increase the liability of any person.

If "reckless indifference" to the rights of others is meant, gross negligence is deemed to be equivalent to a willful tort. Absent an explanation we must assume plaintiff meant "reckless indifference" as synonymous with past wrongdoing. *Wootan v. Shaw,* 1951 OK 307, ¶ 10, 237 P.2d 442, 447, 205 Okl. 283; *Graham v. Keuchel,* 1993 OK 6, ¶ 52, 847 P.2d 342, 361–62. See part IV, *infra,* where we discuss the impact of willful negligence.

7. The relevant provisions of the invoked statute of repose, 12 O.S.1991 § 109, state:

No action in tort to recover damages
(i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
(ii) for injury to property, real or personal, arising out of any such deficiency, or
(iii) for injury to the person or for wrongful death arising out
of any such deficiency, shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after the substantial completion of such an improvement.

8. For the text of § 1301–315(E) see *supra* note 6.

9. The Authority invoked the terms of the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq., which provide in pertinent part:

"The state or political subdivision shall not be liable if a loss or claim results from:

¶ 6 The trial court sustained the Authority's motion to dismiss.[10] It ruled (1) the statute of repose operates to bar Mustain's claim, and (2) the Authority's profit-related activities are unrelated to the bridge and hence not the type of commercial endeavor that deprives the Authority of the RLUA-conferred immunity. Mustain appealed.

¶ 7 Treating the nisi prius order as summary adjudication, the Court of Civil Appeals (COCA) affirmed the trial court's disposition.[11] COCA agreed with the trial court's ruling that the Authority's profit-related activities, demonstrated by the evidentiary materials, do not operate to bring the Authority within the statute's commercial-activity exception. With regard to Mustain's other theory of liability—that the Authority's actions amounted to deliberate, willful or malicious conduct and hence lie outside the protections afforded by the RLUA—COCA noted the legislature had declared the Authority to function as a state agency and held that ·it falls under the protection of the GTCA. Any liability the Authority may bear under the other theory is barred by the GTCA.

## II.

### STANDARD OF REVIEW FOR SUMMARY PROCESS

■ ¶ 8 We agree with COCA that the trial court's disposition stood effected by summary process. Summary process is a procedural pretrial device for the prompt and efficient disposition of an action *sans* forensic combat.[12] It is available where the moving party shows there is no substantial controversy over applicable facts that are material to its defense and any inference which may be reasonably drawn from undisputed facts tendered must be construed in the moving party's favor.[13] Once the moving party has made the required showing, the adverse party must then assume the burden of demonstrating the existence of a material fact that would justify a trial.[14] Summary relief issues stand before us for *de novo* review.[15]

## III.

### A.

**THE RULE IN *HUGHEY*—THAT COMMERCIAL ACTIVITY UNRELATED TO LAND/WATER USE BY INVITED GUESTS IS NOT A BAR TO § 1301–315 IMMUNITY—APPLIES TO TODAY'S CONTROVERSY.**

¶ 9 Mustain's certiorari challenges COCA's holding that the Authority's commercial activities here in question are not of the type that bring it within the RLUA's commercial-activity exception and stand outside the immunity protection otherwise afforded by that Act. She contends that its activities—the col-

* * * * * *
9. Entry upon any property where that entry is expressly or impliedly authorized by law;
10. Natural conditions of the property of the state ... [or]
* * * * * *
13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard ..." (textual alteration supplied)

10. The trial court ultimately sustained a motion to dismiss filed by the Authority and entered judgment in its favor on Mustain's claim, making the rulings required by 12 O.S.2001 § 994(B) for an appealable disposition.

11. Although COCA's' affirmance of the nisi prius order was based on the two reasons stated, its opinion also addressed plaintiff's contention that

an alternative statutory analysis of the RLUA indicates the Act does not apply to the Authority. The court observed that *Hughey, infra* note 17, established the RLUA governs the Authority and applies to collisions with this bridge structure.

12. *Myers v. Missouri Pacific Railroad Co.*, 2002 OK 60, ¶ 9, 52 P.3d 1014, 1018.

13. *Manley v. Brown*, 1999 OK 79, ¶ 22, 989 P.2d 448, 455–56.

14. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497.

15. *De novo* review is utterly nondeferential. It ascribes no weight to a lower tribunal's findings. *Myers, supra* note 12 at ¶ 9 at 1018. *Mahan v. NTC of America*, 1992 OK 8, ¶ 2, 832 P.2d 805, 808 (overruled on other grounds) (Opala, C.J. concurring).

lection of dock-permit fees and miscellaneous rents—are to be likened to those present in *Boyd v. U.S. ex rel. U.S. Army Corps of Engineers*[16] where we determined the Corps was engaged in commercial activity that served to exempt it from the Act's liability provisions. The Authority contends that our later decision in *Hughey v. Grand River Dam Authority*[17] controls today's controversy.

¶ 10 *Boyd* is distinguishable from this cause. *Boyd's* widow brought an action under the Federal Tort Claims Act against the U.S. Army Corps of Engineers (Corps) after her husband was hit by a motor boat while swimming in a lake under its supervision. The question certified to us there was whether our recreational-use statute applied to afford immunity to the United States? *Boyd* dealt with a *federal agency* whose statutorily authorized powers encourage its operation [18] of public parks and recreational facilities, including the assessment of fees [19] for the use of developed recreation sites and facilities. The Corps charged fees for lake activities and, in addition to exacting a flat rental rate for various concessions, obligated some commercial lessees to consign (to the Corps) an additional graduated rent based on a percentage of its income from sales and services.[20] We held that under these facts the Corps was precluded from invoking the immunity provisions of the RLUA.

¶ 11 The Authority contends the facts and legal issues in today's controversy more closely parallel those that spawned the litigation in *Hughey*. There two boaters drowned after their motor boat collided at night with the bridge in contest here, and the decedents' representatives sought to recover from the Authority. Our pronouncement in *Hughey* was twofold. We *first* held that the Authority, whether viewed as a private entity or as an instrumentality of the State, could take advantage of the immunity from premises liability provided by the RLUA. *Second*, although we determined that neither of the Act's two immunity exceptions applied under the facts demonstrated in the record, *Hughey* established that *"the type of commercial activity that takes a landowner out of the purview of § 1301–315 immunity must be connected with the invitees' recreational use of the lands or waters."* [21] Commercial activity unrelated to land/water use by invited guests is not a bar to immunity.[22] The for-profit activity at the center of the controversy in *Hughey*—the Authority's generation of electricity—was held to have had no *"profit-related nexus to the admitted public's presence upon the premises or with its free use of the locus delicti."* [23]

¶ 12 Our review of *Boyd* and *Hughey* reveals the cases address *two different governmental entities, operating under two different legislative frameworks, only one of which had a direct financial interest in the income generated by its lessees.* Mustain's attempt to rely on *Boyd* is unavailing. Today's controversy deals **neither** with the Authority's direct commercial interest in a percentage of its lessees' profits **nor** with lake-user fees as in *Boyd.* We must hence rely here on the distinguishing feature of *Hughey* as outcome-

16. *Boyd v. U.S. ex rel. U.S. Army Corps of Engineers*, 1992 OK 51, 830 P.2d 577.

17. *Hughey v. Grand River Dam Authority*, 1995 OK 56, 897 P.2d 1138.

18. The terms of 16 U.S.C.A. § 460d authorize the Chief of Engineers to construct, maintain, and operate public park and recreational facilities at water resource development projects under control of the Department of the Army.

19. The terms of 16 U.S.C.A. § 460d–3 authorize the establishment and collection of fees from the use of developed recreation sites and facilities.

20. Our holding in *Boyd, supra* note 16 at ¶ 2 at 578, is consistent with those in other jurisdictions where a governmental entity's agreement with a concessioner requires it to pay a fixed percentage of all revenues from operations. In *Ducey v. United States*, 713 F.2d 504 (1983), the Ninth Circuit differentiated the entrepreneur-type landowner, whose land is open for business reasons, from the landowner whom the statute encourages to open land on a gratuitous basis by the promise of immunity. *Ducey* at 511 n.8; See also, *Goodman v. Juniper Springs Canoe Rentals & Recreation, Inc.*, 983 F.Supp. 1384, 1387 (1997).

21. *Hughey, supra* note 17 at ¶ 6 at 1143.

22. *Hughey, supra* note 17 at ¶ 6 at 1143.

23. *Hughey, supra* note 17 at ¶ 6 at 1143.

determinative for today's answer to the question before us.

## B.

### The Authority's Assessment of Dock–Permit Fees and Miscellaneous Rents Does Not Constitute Commercial Activity Within the Meaning of the RLUA Immunity Exception.

■ ¶ 13 Having settled that our pronouncement in *Hughey* governs Mustain's first theory of recovery,[24] we turn to Mustain's assertion that the Authority's commercial activities take it out of the immunity otherwise extended by the RLUA. Applying the test developed in *Hughey*, the question here is *whether the Authority's collection of dock-permit fees and miscellaneous rents creates a profit-related nexus to the admitted public's presence upon the premises or with its free recreational use of the locus delicti?*

¶ 14 The terms of the RLUA do not prohibit the Authority from engaging in commercial or other for-profit activity. Section 1301–315(C) [25] operates to remove from the Authority its immunity protection only when its for-profit activities are connected to (1) the admitted public's presence upon the premises or (2) its free use of the *locus delicti.* We must examine today's evidentiary materials to see if an impermissible nexus exists.

¶ 15 The collection of dock-permit fees is not, as plaintiff asserts, directly connected and inextricably intertwined with one's recreational use of the park or lake. *Dock permit fees are issued against, and paid solely by, dock owners, not by the admitted public.* Certainly those who use the park area for non-lake recreational activities are not impacted by the Authority's collection of dock fees. Even those who use the lake for recreational purposes have no inevitable connection to the docks or dock permit fees. It is entirely possible—and even likely—for a boater to launch a craft onto the water and enjoy the use of the lake without utilizing either a public or private dock. The Authority's assessment of commercial– and private–dock permit fees is neither based upon nor connected to the public's admission to the lake or park premises.

¶ 16 That the public's recreational use of the district's land or lakes is to be free to the public is expressed plainly and repeatedly by the terms of enabling legislation. The text of 82 O.S.1991 § 875(A) begins with this proposition and states "[t]he district shall not prevent free public use of its lands and lakes for recreation purposes ...". Section 875(B) maintains this theme and provides "no charge shall ever be made to the public for right to engage in hunting, fishing, boating or swimming in said lakes, ... *except that the Authority may prescribe an annual fee for the issuance or renewal of a permit for a private anchorage, wharf, dock or boathouse."*[26] The Authority's statutory text re-

---

**24.** Because *Hughey* settled RLUA's applicability to the Authority's lake-operation activities, we need not address at length plaintiff's contention that a textual analysis of § 1301–315 provisions removes her claim from the Act's ambit of authority. She asserts that Grand Lake is neither a "park area" nor a "water area leased to the state" as meant by the terms of the Act. This contention, she asserts, is supported by subsequent legislative modification of the text. Suffice it to say that, regardless of Mustain's arguments, *Hughey* settled the issue, and the RLUA applies to the Authority and to collisions with this very bridge structure.

**25.** For the terms of § 1301–315(C) see *supra* note 5.

**26.** The pertinent provisions of 82 O.S.1991 § 875(B) state:
"All existing public rights-of-way to the areas to be flooded by the impounded waters shall remain open as a way of free public passage to and from the lakes created, and *no charge shall ever be made for right to engage in hunting, fishing, boating or swimming in said lakes,* and no charges shall ever be made for a permit to operate or use or for the inspection of boats and equipment, *except that the Authority may prescribe an annual fee for the issuance or renewal or a permit for a private anchorage, wharf, dock or boathouse.* Such fee shall be used to defray the expenses of operating and equipping the Authority's Lake Patrol. The *public shall have free use of and access* to the waters of the lakes for private use, and *shall have the right to anchorage wharf, dock, boatdock, houseboat and landing privileges free of charge* when used for private boating, but such anchorage, wharf, dock, boatdock, houseboat and landing privileges *shall only be allowed after a permit therefore has been issued."* * * * (emphasis supplied)

quires that the public's recreational use of the water and land be without charge and, *in the same sentence,* authorizes it to collect permit fees for docks open for the public's use. Further text of the enabling act reveals that § 875(C) [27] permits commercial establishments to keep for hire or operation various recreational water devices on lake waters once permits have been obtained. When drafting the Authority's enabling legislation, the legislature plainly did not view the right to exact permit fees from private or commercial enterprises to comprise an indirect fee to lake users or otherwise interfere with the public's free use of the lake. Neither do we.

¶ 17 We can perceive of no commercial or other for-profit nexus to arise between the Authority's statutorily-authorized collection of dock-permit fees and the admitted public's access to, or its free use of, the lake premises. The Authority is a not-for-profit agency [28] whose statutory authorization permits the collection of permit fees for the operation and equipping of the Authority's Lake Patrol.[29] Mustain has presented no evidentiary material to indicate the Authority receives a percentage of revenues from any dock owner

which would create a profit-related nexus to the public's use of the lake. This distinguishes this case from *Boyd.*[30] We hence hold the Authority's exaction of dock-permit fees from owners does not amount to a commercial or other for-profit endeavor contemplated by the terms of § 1301–315(C).[31]

## IV.

## BECAUSE THE AUTHORITY IS GOVERNED BY THE TERMS OF THE GTCA, MUSTAIN'S THEORY OF RECOVERY—THAT THE AUTHORITY'S ACTIONS WERE DELIBERATE, WILLFUL OR MALICIOUS—DOES NOT BRING IT WITHIN THE PURVIEW OF LIABILITY IMPOSABLE UNDER THE ACT, EVEN IF IT IS CORRECT.

■ ¶ 18 Mustain's other argument on certiorari challenges COCA's holding that the Authority's liability (on her other theory of recovery)—that her evidentiary materials present a question of fact as to whether the Authority's failure properly to mark the

**27.** The relevant terms of 82 O.S.1991 § 875(C) provide:

"The district shall prescribe, in the interest of public safety, suitable rules and regulations governing the keeping for hire or operation of a boat or boats, surfboards, aquaplanes, seaskis or similar devices for pecuniary profit or gain on the waters of the lakes. The keeping for hire or operation of a boat or boats ... for pecuniary profit or gain, on the waters of the lake, shall only be allowed after a permit therefor has been issued by the district." (textual alteration supplied)

**28.** *Sheldon v. Grand River Dam Authority,* 1938 OK 76, ¶ 19, 76 P.2d 355, 361, 182 Okl. 24.

**29.** For the terms of 82 O.S.1991 § 875(B) see *supra* note 26.

**30.** Mustain's assertion that the Authority's revenues exceed their expenditures for the Authority's Lake Patrol is immaterial to the issue of whether there is a profit-related link between the public's presence upon, or free access to, the recreational district and the collection of dock-permit fees.

Plaintiff's evidentiary materials also indicate a smaller amount of funds is collected by the Authority and itemized as "Miscellaneous Rents." Because plaintiff offers no other information about these funds—from whom they are collect-

ed or for what purpose—we are unable to determine that there is a commercial link between them and the public's presence on the lake or park area premises which, bars the Authority's claim to immunity under § 1301–315(C).

**31.** The court notes the after-enacted amendments of 2 O.S.1991 § 1301–315 which do not affect this cause. These provisions are found in 2 O.S.2001 § 16–71. Section 16–71(C) provides:

"This section shall not apply if there is any charge made or usually made for entering or using any part of the land or area, or if any commercial or other activity for profit directly related to the use is conducted on any part of the land or area. As used in this subsection, the term "charge" shall mean the admission price or fee asked in return for invitation or permission to enter or go upon the land or area. As used in this subsection, *the term "charge" shall not include a license or permit fee imposed by a governmental entity* for the purpose of regulating the use of land, a water or park area, or lake reservation and shall not include hunting, fishing, boating, and other license and permit fees." (textual alteration supplied)

Because the liability issue is decided in favor of the Authority, we need not make mention of its § 109 repose-based defense. For the terms of 12 O.S.1991 § 109 see *supra* note 7.

bridge and warn lake users of its danger was so reckless as to constitute deliberate, willful, or malicious conduct—need not be addressed because it is controlled by the terms of the GTCA. *She contends this theory of her claim against the Authority is not subject to the GTCA.* This is so because 82 O.S.1991 § 862(*l* )[32] adds to the list of powers granted to the Authority the right "to sue and be sued in ... *tort.*"[33] The quoted language, she urges, stands as a waiver of sovereign immunity. In her view, because the provision in question predates the GTCA's enactment, and because the legislature has not repealed that language, § 862(*l* ) operates to control her claim.

¶ 19 The common-law doctrine of sovereign immunity was abrogated in 1983 by this court's pronouncement in *Vanderpool v. State.*[34] There we held that in the absence of a statute conferring immunity, the state, its political subdivisions and employees acting within the scope of their employment would stand liable in tort in the same manner as a private individual or corporation.[35] The legislature promptly responded by adopting the GTCA, which codified its version of sovereign immunity for the state, its political subdivisions, and for all their employees acting with-

in the scope of employment.[36] Governmental immunity of the state and its political subdivisions is waived "only to the extent and in the manner provided" in the Act.[37]

¶ 20 Central to Mustain's argument is the question whether the Authority is a state entity governed by the terms of the GTCA. While our holding in *Hughey* did not call for a resolution of this first-impression question, we address it today. A review of the relevant statutes and case law leads us to the conclusion that the Authority is indeed covered by that act's provisions. Section 152 of the GTCA defines what instrumentalities are to be included within the term "State." Among those listed is an "agency."[38] The legislature has declared the Authority to be "a governmental agency of the State of Oklahoma,"[39] and we, as well, have recognized the Authority's status as an agency of state government.[40] We hence hold the Authority is a governmental entity intended to be encompassed within the protective cloak of the GTCA.

¶ 21 Having decided that the GTCA applies to the Authority, we now examine Mustain's theory to see if it falls under the Act's purview. The GTCA makes a distinction

---

**32.** The text of 82 O.S. Supp.1998 § 862 adds to the Authority's powers, rights and Privileges. § 862(*l*) provides:

"The district shall have and is hereby authorized to exercise the following powers, rights and privileges:
(*l*) To sue and be sued in its corporate name in contracts, reverse condemnation, *tort,* equity, mandamus and similar actions ..." (textual emphasis supplied)

**33.** *Supra* note 32.

**34.** *Vanderpool v. State of Oklahoma ex rel. Oklahoma Historical Society,* 1983 OK 82, ¶ 19, 672 P.2d 1153, 1156–57 (vitalized by the enactment of the Governmental Tort Claims Act, 51 O.S. Supp.1984 et seq.).

**35.** *Supra* note 34.

**36.** The text of 51 O.S.1991 § 152.1(A) provides:

The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

**37.** The text of 51 O.S.1991–152.1(B) states:

"The state, only to the extent and in the manner provided in this act, waives it immunity and that of its political subdivisions." * * * (textual alteration supplied)

**38.** The GTCA's definitional provisions include the term "State." The terms of 51 O.S. Supp. 1994 § 152(10) provide:

"State" means the State of Oklahoma or any office, department, *agency,* authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof ..." (emphasis supplied)

**39.** The terms of 82 O.S.1991 § 861 state:

* * * "[The Grand River Dam Authority] shall be, and is hereby declared to be, a governmental agency of the State of Oklahoma ... with powers of government ..." * * * (textual alteration supplied)

**40.** *Sheldon v. Grand River Dam Authority, supra* note 28 at ¶ 19 at 361; *Westinghouse Electric Corp. v. Grand River Dam Authority,* 1986 OK 20, ¶ 14, 720 P.2d 713, 716.

between a government employee acting within the scope of employment and one who does not. Section 153(A) of the GTCA rules out the State's liability "for any act or omission of an employee acting outside the scope of his employment."[41] An employee whose acts are malicious, willful, wanton and in bad faith is not acting in the scope of his employment.[42] As an artificial legal entity, the Authority can act solely through its employees. If Mustain's characterization of the actions by the Authority's employees in this case is correct and sustainable by proof, those actions by the agents must be considered as falling outside the scope of their employment. Because Mustain's claims against the Authority are governed by the GTCA, she cannot recover against the Authority for injuries occasioned by deliberate, willful or malicious conduct of its employees.

■ ¶ 22 We turn to Mustain's final assertion—that her claim against the Authority is nevertheless not subject to the GTCA because the provisions of 82 O.S.1991 § 862($l$) authorize tort actions against the Authority. We note first that the "sue and be sued" phrase on which plaintiff relies was enacted at a time when the common-law doctrine of sovereign immunity was in force. We have held that this language does not preclude the government's immunity but is confined in meaning to suits that are cognizable at law. It neither confers on plaintiff a greater right to bring an action than otherwise available

nor operates to extend anyone's legal liability.[43]

■■■ ¶ 23 Mustain maintains legislative intent is unclear concerning which statutory provision controls her claim because the legislature, at the time it enacted the GTCA, did not repeal its earlier provisions that authorized tort suits against the Authority. Generally, statutes addressing the same subject matter are to be construed in a manner which reconciles differing provisions and imparts to each of them an intelligent effect.[44] Legislative repeals may not be implied.[45] It will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, *unless it has done so in express terms.*[46] Our application of canons of statutory construction is in this instance unnecessary. This is so because the legislature's intent that the GTCA supersede § 862($l$) can be readily ascertained from the plain language of the former.

¶ 24 The legislature could not have been clearer in expressing its intent that the GTCA form the sole, comprehensive plan for compensating those injured in their person or property by tortious acts of the state, a political subdivision, or of their employees. Section 153 of the Act expressly provides that liability *"shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."*[47] Its Section 170 mandates *"[t]his act is exclusive and supersedes all home rule charter provisions and special*

41. The relevant text of 51 O.S.1991 § 153(A) provides:

   "The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment ..." * * * (textual alteration supplied)

42. *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895; *Carswell v. Oklahoma State University*, 1999 OK 102, ¶ 20, 995 P.2d 1118, 1123; *Nail v. City of Henryetta*, 1996 OK 12, ¶ 7, 911 P.2d 914, 916.

43. *Henry v. Oklahoma Turnpike Authority*, 1970 OK 232, ¶ 13, 478 P.2d 898, 901.

44. The Latin phrase *"in pari materia"* means "upon the same matter." This canon of construction allows statutes that are *in pari materia* to be construed together, so that inconsistencies

in one may be resolved by examining another statute on the same subject matter. BLACK'S LAW DICTIONARY 794 (7th ed.1999). *Culbertson v. McCann*, 1983 OK 57, ¶ 14, 664 P.2d 388, 391(citing *DeGraffenreid v. Iowa Land and Trust Co.*, 95 P. 624, 639, 20 Okl. 687 (1908)).

45. *Beavin v. State ex rel. Dept. of Public Safety*, 1983 OK 34, ¶ 15, 662 P.2d 299, 302; (citing *Abbott v. Board of Trustees of Oscar Rose J. College*, 1978 OK 129, 586 P.2d 1098 (1978)).

46. *Beavin, supra* note 45 at ¶ 15 at 302.

47. The terms of 51 O.S.1991 § 153(B) are:

   The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise.

*laws on the same subject heretofore, and all acts or parts of acts in conflict herewith are repealed.*" COCA correctly noted that whatever liability the Authority may have borne before the GTCA was enacted, its present legal accountability is controlled by that Act.

## V.

### SUMMARY

¶ 25 The injuries sustained by plaintiff in today's controversy are indeed tragic, but the burden for bearing loss does not fall upon the Grand River Dam Authority. Neither of the Recreational Land Use Act's two exceptions to immunity operates here to remove the Authority from the Act's purview of liability protection. The commercial-activity exception is not triggered by the Authority's collection of commercial– and private–dock permit fees. No "profit-related nexus" exists between the Authority's dock permit-fee assessments and the public's presence upon, or free access to, lake or park premises. Plaintiff's reliance on the Act's other claimed exception—that of bearing liability for deliberate, willful or malicious actions of Authority employees—is likewise of no avail. The Authority is a state agency. Because it falls under the aegis of the Governmental Tort Claims Act, it bears no liability for the willful conduct of its officials.

¶ 26 On certiorari previously granted upon Mustain's petition, the Court of Civil Appeals' opinion is vacated and the nisi prius order, insofar as consistent with today's pronouncement, is affirmed.

¶ 27 WATT, C.J., V.C.J., HODGES, LAVENDER, HARGRAVE, BOUDREAU and WINCHESTER, JJ., concur.

¶ 28 KAUGER and SUMMERS, JJ., concur in part and dissent in part.