2016 OK CIV APP 79

James Lloyd Bogdanich SANDERS, an individual, and Lee Clack, individually and as Personal Representative of the Estate of George R. Bogdanich, Plaintiffs/Appellants,

v.

RIVER PARKS AUTHORITY, an Oklahoma Public Trust Authority, Defendant/Appellee.

Case Number: 114823

Court of Civil Appeals of Oklahoma, Division No. 4.

FILED NOVEMBER 18, 2016

Mandate Issued: 12/14/2016

William W. O'Connor, Margo E. Shipley, NEWTON, O'CONNOR, TURNER & KETCHUM, PC, Tulsa, Oklahoma, for Plaintiffs/Appellants

David L. Weatherford, BIRMINGHAM, MORLEY, WEATHERFORD & PRIORE, P.A., Tulsa, Oklahoma, for Defendant/Appellee

OPINION BY JERRY L. GOODMAN, CHIEF JUDGE:

¶1. James Lloyd Bogdanich Sanders, an individual, and Lee Clack, individually and as personal representative of the Estate of George R. Bogdanich (collectively "Plaintiffs"), appeal a February 19, 2016, order granting the River Parks Authority's (RPA) motion for summary judgment. Based on our review of the record and applicable law, we affirm.

## BACKGROUND

¶2 On May 31, 2011, Reverend George R. Bogdanich (Bogdanich) was walking southbound on the River Parks trail just west of 24th Street and Riverside Drive in Tulsa, Oklahoma, when he was struck by a young boy riding a bicycle. Bogdanich was transferred to St. John's Hospital where he died on June 8, 2011, from injuries sustained in the accident.

¶3 Plaintiffs, Bogdanich's son and daughter, subsequently brought suit against RPA on May 10, 2012, alleging negligent design of the trails where the accident occurred, inadequate warning signage, and insufficient supervision of the River Parks trail system.[1] On July 21, 2015, RPA filed a motion for summary judgment, asserting it was a public trust and was entitled to the protections of the Oklahoma Governmental Tort Claims Act. RPA asserted all claims related to faulty design or construction were barred because such work was performed by independent contractors. It further asserted all of Plaintiffs' claims were barred by 76 O.S.2011 and Supp. 2013, § 10.1, the Recreational Land Use Act (RLUA).

¶4 Plaintiffs responded, denying RPA's assertions. Plaintiffs contended the faulty design of the River Park trails was caused by RPA, not an independent contractor or consultant, noting RPA was required by contract to inspect and approve all design and work. With respect to the RLUA, Plaintiffs asserted RPA was not entitled to immunity because it charged fees for entering and using the River Park trail system, citing 76 O.S. 2011 and Supp. 2013, § 10.1(D)(1).

¶5 By order entered on December 4, 2015, the trial court directed the parties to further brief the court on the exception to immunity under the RLUA for fees charged, citing *Ducey v. U.S.*, 713 F.2d 504 (9th Cir. 1983), as cited in *Mustain v. GRDA*, 2003 OK 43, 68 P.3d 991. After additional briefing by the parties, the trial court granted RPA's motion for summary judgment by order entered on February 19, 2016. Plaintiffs appeal.

## STANDARD OF REVIEW

¶6 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶9, 782 P.2d 924, 926. In reviewing a grant of summary judgment, we must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.* An appeal from an order granting summary judgment is subject to de novo review. *Shull v. Reid*, 2011 OK 72, ¶3, 258 P.3d 521, 523. "In its re-examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority." *Bronson Trailers & Trucks v. Newman*, 2006 OK 46, ¶5, 139 P.3d 885, 889.

---

1. Plaintiffs further filed suit against Nathan Deford and the minor child who struck Bogdanich. On May 27, 2014, a notice of dismissal with prejudice was filed dismissing these defendants.

### ANALYSIS

¶ 7 RPA asserts it has complete immunity from liability on all of Plaintiffs' claims pursuant to the RLUA. Title 76 O.S.2011 and Supp. 2013, § 10.1 provides as follows:[2]

A. 1. The purpose of this section is to encourage landowners to make land available to the public for outdoor recreational purposes by limiting their liability to persons entering upon and using such land and to third persons who may be damaged by the acts or omissions of persons going upon these lands.

. . .

B. An owner who provides the public with land for outdoor recreational purposes owes no duty of care to keep the land safe for entry or use by others, or to give warning to persons entering or using the land of any hazardous conditions, structures, or activities.

C. 1. Except as otherwise provided by this section, an owner who provides the public with land for outdoor recreational purposes shall not:

a. be presumed to extend any assurance that the land is safe for any purpose,

b. incur any duty of care toward a person who enters or uses the land, or

c. assume any liability or responsibility for any injury to persons or property caused by the act or omission of a person who enters or uses the land.

However, § 10.1(D) provides an exception to immunity:

This section shall not apply if:

1. Any charge is made or is usually made for entering or using any part of the land; or

2. Any commercial or other activity for profit directly related to the use is conducted on any part of the land.

"Charge" is defined as:

the admission price or fee asked in return for invitation or permission to enter or go upon the land. The term "charge" shall not include a license or permit fee imposed by a governmental entity for the purpose of regulating the use of land, a water or park area, or lake reservation and shall not include hunting, fishing, boating, and other license and permit fees.

*Id.* at § 10.1(A)(2)(d).

¶ 8 In the present case, Plaintiffs note that Oklahoma's recreational land use statute provides that recreational use immunity shall not apply if "[a]ny charge is made or is usually made for entering or using any part of the land" or if "[a]ny commercial or other activity for profit directly related to the use is conducted on any part of the land." § 10.1(D)(1) and (2). Thus, Plaintiffs assert the exception does not require an injured plaintiff himself to have paid a fee to enter or use the land. Rather, the mere fact a landowner charges any fee to any person or conducts any commercial or other activity for profit is sufficient to preclude immunity under the RLUA. Plaintiffs note RPA charges park usage fees to the public to rent specific areas of the park, to participate in events which make use of the River Parks trail system, and to engage in commercial filming and still photography.[3] In addition, Plaintiffs state RPA leases a portion of land to Swamphouse Partners, LLC, which operates Blue Rose Café and Elwoods, for an annual rental fee of $21,000.00 and a percentage of gross revenues over $1 million. Plaintiffs contend the collection of fees and the lease of land directly relate to the public's usage of the River Parks and trail system. Thus, Plaintiffs maintain the RLUA is inapplicable and RPA is not immune from suit.

**2.** Previously codified at 2 O.S. § 1301 *et seq.*

**3.** To use the River West Festival Park, RPA charges $750.00 for one day, and $250.00 for each additional day. RPA further charges a basic fee of $90.00 per day for exclusive use of a specific area of River Parks, a $2 participant fee for all events where participants use the River

Parks trail system, such as runs, walks and bike rides, and the right to charge additional fees on a case by case basis. Finally, the RPA charges $75.00 for commercial filming per event and still photography is charged by the duration of the pass: a 7–day pass is $40.00, a 6–month pass is $75.00, and an annual pass costs $125.00.

644

¶ 9 RPA disagrees, asserting it is undisputed that there is no charge for the use of the trail system and that all commercial activity related to RPA is totally unrelated to the free usage of the trail. Thus, there is no nexus between the free usage of the trail system, which Bogdanich was using on the day the accident occurred, and the other commercial activity that may occur in the park system.

¶ 10 The Oklahoma Supreme Court addressed the RLUA in *Hughey v. Grand River Dam Authority*, 1995 OK 56, 897 P.2d 1138. In *Hughey*, the plaintiffs in a wrongful death action alleged the decedents drowned after their boat struck an abandoned railroad bridge on Grand Lake at night. They alleged the Authority: (1) had knowledge of the bridge's dangerous condition or location; and (2) negligently failed to provide lights or warning signs in the vicinity of the hazard's location. The trial court granted the Authority's motion for summary judgment under both the Tort Claims Act and the RLUA. On appeal, the Supreme Court held that the RLUA applied with equal force to government entities and private landowners. *Id.* at ¶ 5, at 1142. Because the plaintiffs could not demonstrate that the Authority was exempt from immunity under the RLUA, the Supreme Court held that summary judgment was proper. The Court specifically noted that the only commercial activity established by the record was the authority's generation of

electricity, a use without "any profit-related nexus to the admitted public's presence upon the premises." *Id.* at ¶ 6, at 1143 (emphasis omitted). "The plain reading of the RLUA indicates that the type of commercial activity which takes a landowner out of the purview of immunity must be connected with the invitees' commercial use of the lands or waters." *Id.*

¶ 11 Subsequently, in *Mustain v. Grand River Dam Authority*, 2003 OK 43, 68 P.3d 991, the Supreme Court again held that the RLUA's exception to immunity did not apply. The plaintiff, who had been injured when her water craft struck an abandoned bridge's support structure in Grand Lake, argued that the Authority engaged in commercial activities through its charging of dock permit fees. The Supreme Court disagreed, noting the fees were paid solely by dock owners, not by the public: "The Authority's assessment of commercial- and private-dock permit fees is neither based upon nor connected to the public's admission to the lake or park premises." *Id.* at ¶ 15, at 996. The Court distinguished *Boyd v. U.S. ex rel. U.S. Army Corps of Engineers*, 1992 OK 51, 830 P.2d 577, where the Corps charged fees for lake activities and exacted a flat rental fee for concessions. *Mustain*, at ¶¶ 9–10, at 995.

¶ 12 The *Mustain* Court cited *Ducey v. United States*, 713 F.2d 504 (9th Cir. 1983):[4]

4. In the present case, the trial court requested the parties brief the court on *Ducey*. In *Ducey*, the Ninth Circuit Court of Appeals addressed whether the government was immune from tort liability under a Nevada recreational use statute or whether a "consideration exception" precluded immunity.

In *Ducey*, three park users were killed in a flash flood while camping and boating in the Lake Mead National Recreational Area in Nevada. The National Park Service (NPS) operated the recreational area. Eldorado Canyon Resorts, Inc. (ECR), a concessioner of the NPS, operated a café/store, boat slips, fueling, *inter alia*. ECR was required to remit to the United States ¾% of its gross annual receipts from sales at the café/store and from revenue generated by boat slip and trailer space.

On the day in question, one of the park users had paid a fee directly to the NPS to gain entrance to or to engage in recreational activities on the public lands in the recreational area. Two of the users had paid rental fees to ECR for a

boat slip, one user had rented a trailer slip, and all three had shopped at the café/store.

The court rejected the government's interpretation that the consideration exception was inapplicable because the users made no direct payments for permission to enter, and, even if such consideration was tendered, it was not tendered to the United States. The court found the language of the consideration exception suggested a broad reading of the statute; the exception was not limited in narrow terms to "fee" or "charge" but rather used the far more encompassing term of "consideration." "Confining the term 'consideration' ... solely to direct payments of entrance fees or charges would extend the immunity of the statute beyond those persons whom the statutory policy would protect." *Id.* at 511. The court further found the statute did not specify to whom consideration must be tendered. The court held that "consideration must be tendered directly or indirectly to a person who has the power to grant or deny permission to participate in recreational activities. Since the concession agreement did not give ECR the power to deny permission to

Our holding in *Boyd, supra* note 16 at ¶ 2 at 578, is consistent with those in other jurisdictions where a governmental entity's agreement with a concessioner requires it to pay a fixed percentage of all revenues from operations. In *Ducey v. United States*, 713 F.2d 504 (1983), the Ninth Circuit differentiated the entrepreneur-type landowner, whose land is open for business reasons, from the landowner whom the statute encourages to open land on a gratuitous basis by the promise of immunity. *Ducey*, at 511 n.8; See also, *Goodman v. Juniper Springs Canoe Rentals & Recreation, Inc.*, 983 F.Supp. 1384, 1387 (1997).

*Mustain*, 2003 OK 43, at ¶ 10 fn. 20, 68 P.3d at 995 fn. 20. Because the Supreme Court perceived "no commercial or other for-profit nexus" between the Authority's collection of dock-permit fees and the admitted public's access to the lake, it held the Authority was immune from suit. *Id.* at ¶¶ 17, 25, at 997, 1000.

¶ 13 Accordingly, the RLUA does not prohibit the RPA from engaging in commercial or other for-profit activity. Rather, § 10.1(D) removes the immunity protection "only when the for-profit activities are connected to 1) the admitted public's presence upon the premises, or 2) its free use of the *locus delicti*." *Id.* at ¶ 14, at 996. Thus, the type of commercial activity that takes a landowner out of immunity must be connected with the invitees' recreational use of the land. Commercial activity unrelated to the land use by the invited guests is not a bar to immunity. *Id.* at ¶ 11, at 995.

¶ 14 The RPA's fees charged to restaurants licensed to operate in the River Parks are not "directly related to the [public's] use of the River Parks trails on which Bogdanich was walking at the time of his death. § 10.1(D)(2). Likewise unrelated to public use of the River Parks trails are the fees charged for exclusive use of the 14 acre River West Festival Park or commercial filming and still photography. However, there is a relationship between fees charged to event organizers whose participants use the River Parks trail system during runs, walks and bike rides. As instructed by the Supreme Court's interpretation of 76 O.S. 2011, § 10.1 in *Mustain*, we hold that this relationship is insufficient to deprive the RPA of tort immunity in this case. According to the RPA's Fee Schedule & Rental Rates, event organizers do not pay for exclusive use of the River Parks' trail system. The non-participant public is not excluded from the trail system during the event. More importantly, the non-participant public's "use of the [trail system] for recreational purposes [has] no inevitable connection" to the fees charged to event organizers. *Mustain*, 2003 OK 43, at ¶ 15, at 996. Participants in these events do not pay for exclusive access to the trail system during the event. Rather, they pay for the right to be timed, scored, and to receive prizes unlike the non-participant public who are also using the trail system during the event. Accordingly, the trial court's February 19, 2016, order granting RPA summary judgment was correct and is affirmed.

¶ 15 **AFFIRMED.**

WISEMAN, P.J., FISCHER, J., concur.

---

recreate in Eldorado Canyon, the exception is applicable only if consideration was tendered, directly or indirectly, to the United States in return for permission to recreate in Eldorado Canyon." *Id.* at 513. The court emphasized that the exception serves to distinguish "the entrepre-

neur-landowner whose land is open for business reasons" from "the landowner whom the statute encourages to open his land on a gratuitous basis by the promise of immunity." *Id.* at 514. Thus, the court concluded the consideration exception applied.