2001 OK 31

Craig ABBOTT, Appellant/Counter–
Appellee,

v.

Katherine ABBOTT, now Kelly,
Appellee/Counter–
Appellant.

No. 94,203.

Supreme Court of Oklahoma.

April 10, 2001.

**292**

Lauren LeBlanc Day, Oklahoma City, OK, Catherine H. Petersen, Norman, OK, Attorneys for Appellant.

Philip F. Horning, K. Nicholle Jones, Horning, Grove, Hulett, Thompson & Comstock, Oklahoma City, OK, Attorneys for Appellee.

SUMMERS, J.

¶1 This is an appeal by a noncustodial father from the trial court's granting of custodial mother's motion allowing her to relocate to Ann Arbor, Michigan with their son. The court also modified father's visitation schedule to accommodate changes necessitated by the move. The father contends that the trial court erred in allowing the move, and argues that the trial judge applied the wrong standard in reaching his decision. Mother brings a counter-appeal challenging attorney fee and cost awards entered by the trial court. We affirm the trial court's judgment in favor of mother on the issue of relocation. We modify the trial court's award of attorney's fee and costs, and reverse the trial court's judgment regarding transportation costs and the abatement of child support during summer visitation.

¶2 The parties, Katherine Abbott, now Kelly, and Craig Abbott, were divorced in Oklahoma County in 1994 after six years of marriage. She was awarded custody of their only child, three-year-old Kyle, and father was awarded standard visitation rights. Mother is a native of Michigan. The parties met while they were students at Michigan State University and married there. They moved to Oklahoma so father could attend University of Oklahoma College of Medicine, and he has since completed his medical training and is a successful dermatologist here. Mother was a student at the University of Oklahoma College of Dentistry, and when she completed her residency in orthodontics she was offered a faculty position with the Department of Orthodontics and Pediatric Dentistry at the University of Michigan Dental School. Her acceptance of that position precipitated this action.

¶3 Mother commenced this modification proceeding to advise the court of her intended move, and requested that in consideration of the distance involved, the court modify father's visitation schedule to give him less frequent but longer periods of visitation. Father responded by seeking to change custody to himself in the event mother moved to Michigan. Evidence at the trial showed that their eight-year-old son, Kyle, was an exceptionally well adjusted, intelligent and happy child. Mother was without challenge a fit and proper custodial parent. Father fully exercised all his visitation rights, and he and Kyle had a very good relationship. Father's existing visitation arrangement allowed him to see Kyle for approximately 35% of Kyle's total time, and the altered schedule requested by mother would still allow father 30%. Both parents had remarried, and Kyle had an excellent relationship with his stepfather and his stepmother and her extended family.

¶4 Mother and her husband were very enthusiastic about their move. Mother's job was an unmatchable career enhancing position and it offered their family financial and other substantial benefits. Her husband would have better career opportunities open to him there. Mother's family lives in Michigan and Kyle has more than 100 relatives nearby, including his maternal grandparents

and many aunts, uncles and cousins. The area offers many cultural, educational and sporting opportunities which would be available to Kyle. Father opposed the move. He contended that moving away from Oklahoma would not be in Kyle's best interests because he had been here all his life, he was happy and thriving here with his family and friends, and he should not have to move just because his mother wanted to take this employment position. Father suggested that the interests of mother and her new family would be served better if she would remain in Oklahoma and practice here.

¶ 5 The trial court first announced its decision in favor of father, granting his motion to modify custody if indeed mother relocated to Michigan. The court denied mother's motion to reconsider, finding that it was in Kyle's best interests to stay in Oklahoma City because it was the place of stability for him, it was the only home he had ever known and he was flourishing here. The court accordingly ruled if mother moved to Michigan, Kyle's custody would be changed to his father. The court found that mother's proposed move met the custody modification standards set out in *Gibbons v. Gibbons*, 1968 OK 77, 442 P.2d 482, and mother was enjoined from moving him to Michigan.

¶ 6 The trial court later vacated this ruling on its own motion pursuant to 12 O.S.1991 § 1031.1. The court announced to the parties that upon reviewing case law and family law treatises, it had determined that the decision announced earlier was wrong. Thus the court entered the order at issue here, which granted mother's motion allowing her to move to Michigan with Kyle and established new visitation provisions. The judge advised the parties that he determined he had used an incorrect test in restricting mother from relocating, as he had been concerned with what appeared to be the best geographical location for Kyle. In that regard the court had considered it would be best for Kyle and his mother to stay in Oklahoma City. Upon further reflection and consideration of the law, however, the judge stated that he realized that the question he should have addressed was not one of geography, but custody. Therefore since the evidence did not support a finding that Kyle would be better off if his custody were changed from his mother to his father, the court reversed his prior ruling in favor of father and allowed mother to relocate to Michigan. The court stated that as Kyle's custodial parent, it was up to mother to decide what was best for him, and the court could not "infringe upon her province as a parent" to make the determination of where they should reside.

¶ 7 Father appeals, contending that the court had reached the correct result for the proper reasons when it had restricted mother from removing Kyle from Oklahoma. He argues that in light of the court's finding that the move to Michigan would be a permanent, material and substantial change which would adversely affect Kyle, it was an abuse of discretion for the court to allow her to relocate. He argues that the court now misconstrues its duty under *Gibbons,* supra.

¶ 8 We find the trial court correctly analyzed its duty as being a determination of the issue of Kyle's custody, and reached the correct result in allowing mother to relocate. We affirm that decision. In *Kaiser v. Kaiser,* 2001 OK 30, 23 P.2d 278, we held that in the absence of evidence showing prejudice to the child, a custodial parent has a presumptive right under 10 O.S.1991 § 19 to move with the child and establish a new residence. We found there that a custodial parent's decision to move to a new geographic location with the child is not in itself a change of circumstances which will justify a change of custody. We also found that maintaining father's existing visitation schedule is not a sufficient basis for denying the custodial parent's right to relocate. Under *Gibbons,* supra, a custody order may not be modified unless the applicant parent demonstrates a permanent, substantial and material change of circumstances which directly and adversely affects a child in such a material way that as a result the child would be substantially better off if custody were changed to the other parent. In a relocation case the burden is on the noncustodial parent to show that the child will be placed at risk of specific and real harm by reason of living with the custodial parent in the new location and, if so, that he would be substantially better off if

his custody were changed to the other parent.

¶ 9 No facts were presented which showed prejudice to Kyle would result from moving to Michigan with his mother, who was shown to be a very fit and proper custodian. Her decision to accept the position in Michigan and relocate there was within her right as his custodial parent and assured by statute.

¶ 10 Mother contends that the trial court erred in denying her motion for father to pay her attorney's fee and costs. She argues that under the facts of this case the trial court abused its discretion in granting her only $7,870.00 of the $48,347.42 in attorney's fee and costs which were required to secure her right to relocate. She points out that this amount was granted by the trial court after the initial ruling against her on the relocation issue upon her application documenting $27,565 in fees and $465.47 in costs. Later, after she had prevailed on the issue of relocation, mother presented a second application and supplement to the trial court which documented an additional $20,165.50 in attorney fees and costs of $379.45. The trial court denied any additional award for fees and costs.

¶ 11 Under the terms of 43 O.S. Supp. 1997 § 110(D), the court may in its discretion order one party in a modification action to pay the attorney fees of the other. Mother acknowledges the authority that counsel fee allowances claimed in disputes under the statute do not depend on any one factor such as status as the prevailing party or the financial means of a party, but are granted only to litigants who qualify through the process of a "judicial balancing of the equities" *Thielenhaus v. Thielenhaus,* 1995 OK 5, 890 P.2d 925, 935; See *Finger v. Finger,* 1996 OK CIV APP 91, 923 P.2d 1195.

¶ 12 Mother argues that the totality of the facts place her within the intended reach of the *Thielenhaus* test, and require us to find the trial court abused its discretion in failing to allow her the entirety, or at least a much larger amount, of her attorney fees and costs. We agree in part. The parties found it necessary to vigorously litigate this proposed modification to a conclusion, and we

have no doubt that each considered his or her efforts to be in the best interest of the child. There is considerable disparity in the respective incomes and net worths of the parties, however, and that is one of the factors that may be taken into account. Based on our consideration of all the equities we conclude that the trial court should have awarded the mother an additional $15,000 in attorney fees and costs, and we so order.

¶ 13 We find that mother's complaints are also well taken as to the trial court's rulings that she should pay 100% of the transportation costs for Kyle's visitation periods with his father, and that father's child support payments should totally abate for the period of 30 days in the summer while Kyle is with his father. We find that both rulings are an abuse of discretion. For these considerations the father's income, which was 12 times that of mother's, is a significant factor and should have been given more importance by the trial court. This common sense view is reflected by 43 O.S. Supp.1999 § 118(C)(14)(b), (now set forth in 43 O.S.2000 § 118(E)15) providing that transportation expenses of a child between the homes of the parents may be "divided between the parents in proportion to their adjusted gross income."

¶ 14 We also disagree with the trial court's order totally abating father's responsibility for payment of child support during the month that Kyle visits him in Oklahoma. Most expenses borne by the custodial parent for the maintenance of the child remain fixed and constant for that parent even though the child is visiting with the other parent. As a matter of economic equity, courts do sometimes grant a noncustodial parent an abatement of child support if the facts show the reduction is necessary to enable that parent to be better able to care for the child during a longer period of visitation such as summer visitation. Here, however, no necessity for such relief was shown.

¶ 15 The order of the trial court as to attorney fees, transportation costs, and summer abatement of child support is reversed, and the matter is remanded to the District Court of Oklahoma County for further pro-

ceedings consistent with this opinion. In all other respects the judgment of the District Court is affirmed.

¶16 WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶17 HARGRAVE, C.J., and OPALA, J., concur in part, dissent in part.