2002 OK CIV APP 127

**Johnny R. GRIGGS, Plaintiff/Appellant/Counter Appellee,**

v.

**Leyca K. McKINNEY, Defendant/Appellee/Counter Appellant.**

**No. 95,748.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 19, 2002.

As Corrected July 23, 2002.

Rehearing Denied Sept. 6, 2002.

Certiorari Denied Dec. 3, 2002.

Barry K. Roberts, Norman, OK, for Plaintiff/Appellant/Counter Appellee.

Gary L. Parrish, Oklahoma City, OK, for Defendant/Appellee/Counter Appellant.

1. The trial court used the Child Support Guideline Schedule in effect at the time this action was commenced on September 23, 1999, 43 O.S.1991

## OPINION

ADAMS, Judge:

¶1 Johnny Griggs (Father) filed this paternity action seeking a judicial determination of his support obligation toward M, the child born to Leyca McKinney (Mother) and Father. After a hearing, the trial court determined the amount of child support to be paid by Father, determined Father's ongoing obligation concerning childcare and medical expenses, and granted Mother a judgment based upon that child support amount from M's birth less amounts Father had paid already (The Child Support Order). After another hearing, the trial court denied Mother's request for attorney fees (The Attorney Fee Order).

¶2 Before the orders completely reflecting those rulings were filed, Mother relocated out of state, and a controversy developed concerning the appropriate childcare expense. After a hearing in response to a "Motion for Relief" filed by Father, the trial court entered an order resolving that controversy (The Childcare Expense Order). Father's appeal alleges error in the first and third orders. Mother's counter appeal alleges error in the second order. We conclude the trial court did not abuse its discretion in either The Attorney Fee Order or The Childcare Expense Order and affirm those orders. However, we conclude the trial court did abuse its discretion in The Child Support Order and reverse. As a result, we remand the case for further proceedings.

### The Child Support Order

¶3 The trial court ordered Father to pay Mother $2,361.63 per month for child support in addition to 91% of childcare, health insurance, and uncovered medical expenses. The trial court also awarded Mother a judgment against Father for $49,782.50 for child support covering the period between M's birth and the date it announced its order.

¶4 In doing so, the trial court found Father's monthly income for purposes of the Child Support Guidelines[1] to be $29,200

§ 119. Effective November 1, 1999, the Legislature amended that schedule, see 43 O.S.2001 § 119. Neither party raises any appellate objec-

monthly and Mother's income to be $2,800. Relying upon its view of *Mocnik v. Mocnik,* 1992 OK 99, 838 P.2d 500, the trial court determined the total monthly parental support to be $2,595.20,[2] with Father's obligation being 91% of that amount, or $2,361.63. Father argues the trial court erred in using only a mathematical extrapolation and not considering either need or lifestyle factors. We agree.

¶5 *Archer v. Archer,* 1991 OK CIV APP 28, 813 P.2d 1059 (Approved for publication by the Supreme Court),[3] is the definitive case in our state for setting child support when the parents' total monthly income exceeds the highest amount for which the Guideline schedule provides a corresponding level of total parental support. *Archer* was a divorce case where the parents had been married almost 12 years and had three minor children. The Court rejected the father's argument that child support could exceed the highest amount reflected in the Guideline schedule only where the children had "exceptional needs."

¶6 Instead, the Court recognized that the Guidelines adopted by the Legislature took into account both the presumed needs of the children and the parents' ability to pay. As a result, the Court held "a trial court, when confronted with high total parental income, must determine an appropriate combined support level in excess of the table amount based on the circumstances of each case."

In doing so, "[t]he trial court should consider the childrens' (sic) needs *and* the parents' ability to pay and prior standard of living." (Emphasis in original.) *Archer,* 1991 OK CIV APP 28, ¶¶10–11, 813 P.2d at 1061.

¶7 The trial court order we review here did not follow *Archer,* but focused completely on Father's ability to pay. The record contains no evidence concerning the direct and indirect expenses involved in raising M, at least regarding any expenses relevant to determining the child support obligation.[4] The trial court concluded that its mathematical extrapolation approach was authorized by *Mocnik.* We disagree.

¶8 The portion of *Mocnik* relevant here addressed an argument by the custodial parent who complained that the trial court abused its discretion in determining child support. As in *Archer,* the parents were married for a significant period and the children had experienced the lifestyle which could be provided by the non-custodial parent's level of income. Moreover, the custodial parent presented evidence of the children's direct and indirect expenses. As a tool in analysis, the Court used a mathematical extrapolation to determine what it concluded was a level of child support which "would be consistent with the Guides." *Mocnik,* 1992 OK 99, ¶38, 838 P.2d at 507. The trial court here performed similar calculations and based its order totally on the result.[5]

tion to this decision, and we express no opinion on whether that decision was correct.

2. The version of § 119 in effect at the time this case was filed provided that the total parental support for a total monthly income exceeding $10,000 should be the amount computed for $10,000 "and such additional amount as the court may determine." The Schedule showed total parental support at $10,000 for one child was $811, which is 8.11% of monthly income. The trial court applied that same percentage to the remaining $22,000 to reach its result.

3. Opinions by the Court of Civil Appeals which bear this notation are accorded precedential value. *See* Okla.Sup.Ct.R. 1.200(c)(2).

4. The record does contain some evidence concerning costs of childcare and medical expenses. However, both of these items of expense are allocated, according to the Guidelines, separately

from the primary child support obligation and thus have no bearing on "need" for purposes of this analysis.

5. *Mocnik* compared the Guideline schedule's highest total parental support amount for two children, $1,352, with the highest total monthly income on the schedule, $10,000, and applied that same percentage, 13.52%, to all of the parents' income. The trial court here applied 8.11% because the level of total parental support corresponding to $10,000 income is $811. In some sense, this calculation is consistent with the Guideline schedule. However, applying the same *percentage* to all income in excess of $10,000 does not take into account another fact demonstrated by examining the Guideline schedules, *i.e.,* the ratio between total parental support and income decreases as income increases. If some mathematical extrapolation is helpful, using one that recognizes this fact would be more consistent with the approach adopted by the Legislature. For example, total parental support for

¶ 9 Nothing in *Mocnik* suggests that this "one size fits all" mathematical extrapolation is a substitute for the "circumstances of each case" analysis required by *Archer*. The *Mocnik* Court merely used the mathematical extrapolation as a means of illustrating that the trial court's award was not inequitable.

¶ 10 This trial court heard no evidence concerning the direct or indirect expenses for M. Moreover, the "prior standard of living" component of the *Archer* analysis requires careful consideration where, as here, the parents have never lived together and there is no "pre-divorce standard of living." Although, as recognized in *Archer*, a trial court does not err when it allows children to benefit from the affluence of the non-custodial parent simply because the custodial parent receives an incidental benefit,[6] the trial court must be careful to tailor that support to maximize the direct benefit to the child.

¶ 11 This trial court considered neither of these two essential factors in setting child support. As a result, its order setting child support and entering a judgment for back child support is an abuse of discretion and must be set aside. The case must be remanded for a new trial at which the trial court should receive evidence concerning both of these factors and determine an appropriate level of child support based upon the circumstances of *this* case. We do not consider Father's additional argument asserting that the Guidelines deny him equal protection of the laws and are unconstitutional because that argument was not raised in the trial court. *See Northwest Datsun v. Oklahoma Motor Vehicle Commission,* 1987 OK 31, 736 P.2d 516.

The Childcare Expense Order

¶ 12 Approximately two months after the trial court announced its decision which is memorialized in The Child Support Order, Mother relocated to Oregon, and the childcare expense requested by Mother increased dramatically. In addition, Mother ceased to be employed and began work to start her own business. Father filed a "Motion for Relief" in which he asked the trial court to determine the reasonableness of the amounts requested by Mother for childcare expense. He also contended "it would be more equitable given the circumstances of this particular case and the potential for abuse to set a cap on child care which is reasonable in keeping with the independent contractor status of [Mother]."

¶ 13 The trial court conducted a hearing and received evidence concerning the basis for Mother's childcare expense claims, her activities related to earning an income, and the services provided to M in the facilities chosen by Mother. In addition, the trial court received evidence concerning the cost at other childcare facilities available to Mother. During that hearing, Father urged the trial court to deviate from the Guidelines by requiring Mother to bear 50% of the childcare cost. In The Childcare Expense Order, the trial court denied Father's deviation request but did relieve Father of any obligation for his share of childcare expense for four months when the trial court concluded Mother was "coming to this decision" to pursue an opportunity to start her own business and had declined employment opportunities to pursue that business.

¶ 14 The trial court also concluded that Mother was then actively engaged in her business and that Father's obligation to share proportionately in childcare expenses

one child at $10,000 is $45 dollars more than support for one child at $9,000. Applying that same level of increase to income in excess of $10,000 would result in an extrapolated total parental support amount of $1,261 for $20,000 in monthly income. These calculations are based on the Guideline schedule in effect when Father filed this case. The Guideline schedule which became effective November 1, 1999, expands the schedule to include monthly incomes up through $15,000 and increases the amounts generally. However, the same general principle

is followed, at least after monthly income exceeds $5,000, *i.e.*, the ratio between total parental support and income decreases as income increases.

6. In reaching this conclusion, *Archer* considered the potential impact of "[d]enying children the benefits *which they have experienced* from an affluent lifestyle simply because the resources to support that lifestyle" belong to the non-custodial parent. 1991 OK CIV APP 28, ¶ 11, 813 P.2d at 1061. (Emphasis added.)

should resume. However, the trial court set a maximum level on which that obligation was to be based which was less than the amount claimed by Mother because the trial court found that her higher expense included an educational component which should not be included in the childcare expense allocation. The maximum level set by the trial court was based on the evidence presented concerning childcare cost in the area in which Mother now resides.

¶ 15 On appeal, Father contends that the trial court should have exercised its power under 43 O.S.Supp.1998 § 118(A) to deviate from the Guidelines on the allocation of the childcare expense in order to avoid an obligation by Father which was "unjust, inequitable, unreasonable, or inappropriate under the circumstances." We review the trial court's decision refusing to do so under an abuse of discretion standard.

¶ 16 The evidence in this record supports the conclusion that Father's childcare expense obligation increased by approximately $215.00 monthly as a result of Mother's decision to relocate to Oregon. If we understand Father's argument, he believes it is inequitable for him to bear any increased costs associated with Mother's decision to relocate. However, he has provided no authority suggesting that Mother's exercise of her presumptive right to relocate with the child, *see* 10 O.S.1991 § 19, should lessen his obligation to contribute to the reasonable cost of childcare. Under the circumstances of this case, *Abbott v. Abbott,* 2001 OK 31, 25 P.3d 291, suggests otherwise.[7]

¶ 17 The Childcare Expense Order is responsive to the evidence before the trial court and represents a reasoned attempt to balance the interests of Father and Mother. Father has shown no abuse of discretion, and The Childcare Expense Order will be affirmed.

### The Attorney Fee Order

¶ 18 Citing *Abbott v. Abbott,* Mother argues the trial court abused its discretion in denying her attorney fee request because of the wide disparity in the parties' incomes. The trial court based its order on the conclusion that Mother "has sufficient resources from which to pay her own attorney fees herein."

¶ 19 In *Abbott,* the Court concluded the trial court should have made a larger attorney fee award and abused its discretion in not doing so. Contrary to Mother's argument, however, the Court did not base its decision only on the disparity in the parties' incomes. Rather, the Court noted, "[t]here is considerable disparity in the respective incomes and *net worths* of the parties." 2001 OK 31,¶ 12, 25 P.3d at 294. (Emphasis added).

¶ 20 Unfortunately, we have no record of the hearing on attorney fees and are unable to determine whether the trial court's conclusion that Mother had ample resources to pay her own attorney fees is clearly against the weight of the evidence. Mother had the obligation to secure that record, *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721, and we will not presume error from a silent record, *Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496. The Attorney Fee Order must be affirmed.

### Conclusion

¶ 21 On this record, we are unable to conclude the trial court abused its discretion in either The Childcare Expense Order or The Attorney Fee Order and those orders are affirmed. However, the trial court did abuse its discretion in basing Father's child support obligation, exclusive of childcare and medical expense, solely on a mathematical extrapolation from the Guideline schedules rather than evidence concerning the direct and indirect expenses of the child consistent with a lifestyle which would be appropriate for the child under the circumstances, and The Child

---

7. The *Abbott* Court reversed a trial court order which required a relocating custodial parent to bear 100% of the transportation cost to enable visitation by the non-custodial parent, citing the non-custodial parent's high income level as a factor to be considered in that decision and strongly suggesting that those costs should be allocated proportionately based on the parties' incomes.

Support Order, including the judgment for back child support, is reversed. The case is remanded for new trial consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HANSEN, P.J., and MITCHELL, J., concur.