2008 OK CIV APP 68

**Bonnie HARRISON, formerly Morgan, Petitioner/Appellee,**

**v.**

**Curtis Eugene MORGAN, Respondent/Appellant.**

**No. 104,342.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 20, 2008.

Crieg Rittenhouse, Guymon, OK, for Petitioner/Appellee.

Christopher J. Liebman, Guymon, OK, for Respondent/Appellant.

Scott D. Boughton, Assistant Attorney General, Oklahoma City, OK, for State of Oklahoma.

## OPINION

ADAMS, Presiding Judge.

¶1 Curtis Morgan (Father) appeals a trial court order denying him permission to relocate with the parties' children in his custody from Guymon, Oklahoma to Poteau, Oklahoma, over the objection of the children's Mother, Bonnie Harrison, formerly Morgan. Although that portion of the trial court order which denies Mother's request to modify custody was not appealed and is affirmed, we conclude the decision on the relocation issue is against the clear weight of the evidence and must be reversed, with the case remanded for modification of visitation orders.

¶2 Mother and Father dissolved their marriage in 2000 and lived in or near Guymon, Oklahoma, where they exercised joint custody of their two minor children, M.M. and C.M. Father received temporary custody of both children in November of 2003, and on March 18, 2004, the trial court approved the parties' agreement to terminate joint custody and to grant sole custody to Father and visitation rights to Mother. Two years later, as required by 43 O.S.Supp.2002 § 112.3, Father gave timely notice of his intent to relocate with the children to Poteau, Oklahoma. Mother filed an objection and also moved to modify custody. After a hearing covering both issues, the trial court did not modify custody but upheld Mother's objection to the relocation.

¶3 Only Father appealed, arguing, inter alia, that the trial court abused its discretion in upholding Mother's objection because that decision was against the clear weight of the evidence and contrary to § 112.3.[1] Our analysis of any statutory interpretation issues is de novo and requires a non-deferential, plenary and independent review of the trial court's legal rulings. *Fulsom v. Fulsom*, 2003 OK 96, 81 P.3d 652. Father's complaints regarding the sufficiency

of the evidence require us to review all of the evidence and reverse only if the trial court's decision is against the clear weight of the evidence. *Gorham v. Gorham*, 1984 OK 90, 692 P.2d 1375.

¶4 Therefore, we have two tasks. First, we must determine the applicable legal standards for court interference with relocation of children subject to a custody order in a marital dissolution action. Second, we must determine whether the trial court's conclusions are consistent with the application of those standards, accepting the trial court's factual determinations unless they are against the clear weight of the evidence.

## THE LEGAL STANDARDS

¶5 From at least 1910 until November 1, 2002, Oklahoma's law concerning the ability of a parent with custody of a minor to change the child's residence was succinctly stated in 10 O.S.2001 § 19, which provides: "[a] parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child." So far as we can determine, this statute had never been applied or interpreted in a reported case concerning parental relocation prior to *Kaiser v. Kaiser*, 2001 OK 30, 23 P.3d 278, which was decided in 2001.

¶6 *Kaiser* was an appeal of an order which prohibited a mother, upon peril of losing custody, from moving the child from Oklahoma City, Oklahoma, to a suburb of Washington, D.C., where the mother had been offered a job which was described as "the opportunity of a lifetime." The Court interpreted § 19 as giving a custodial parent a presumptive right to change the child's residence unless there is a showing of prejudice to the rights or welfare of the child, and concluded, at 2001 OK 30, ¶31, 23 P.3d at 286:

relocation test identified and used in *Kaiser v. Kaiser*, 2001 OK 30, 23 P.3d 278, *Abbott v. Abbott*, 2001 OK 31, 25 P.3d 291, and *Casey*, which was based on 10 O.S.2001 § 19. Our discussion of the application of § 112.3 includes an analysis of the interplay between that statute, § 19 and the cases.

---

1. Father also argued that § 112.3 violated his constitutional right to travel and to his substantive due process right to make decisions concerning the care, custody and control of his children. In view of our decision we need not consider this issue. *See Casey v. Casey*, 2002 OK 70, 58 P.3d 763. Father also argues the trial court erred in holding § 112.3 preempted application of the

The evidence presented below did not support the trial judge's decision restricting mother from relocating under peril of losing custody. *There was no showing that [the child]'s welfare was placed at risk* by remaining in the custody of his mother; she is unquestionably a fit parent who takes good care of her son and makes reasonable decisions regarding his care. *Maintaining father's existing visitation schedule was not a sufficient basis for the denial of mother's relocation.* (Emphasis added).

¶ 7 In discussing the effect of a relocation on a change in custody, *Kaiser* held that the custodial parent's relocation was not *by itself* a change of circumstances which would justify modification of custody. Under the Court's holding, if the custodial parent is a fit parent, relocation can result in a change in custody only when "the child will be placed at risk of specific and real harm by reason of living with the custodial parent in the new location." *Kaiser*, 2001 OK 30, ¶ 33, 23 P.3d at 287.

¶ 8 One week after *Kaiser* was issued, the Court decided *Abbott*. Once again, the appeal involved a proposed relocation by the custodial parent, the mother, and a motion to change custody based upon such a change filed by the non-custodial parent, the father. The trial court initially announced a ruling in the father's favor, changing custody to him if the mother relocated. Thereafter, the trial court vacated that ruling, and denied the father's motion to modify.

¶ 9 In affirming the trial court's decision, the Court reiterated its application of the "real and specific harm" test which it had crafted in *Kaiser* for determining when a relocation may form the basis of change in circumstances sufficient to authorize a change in custody. The relocation issue was addressed again, approximately one month before § 112.3 became effective, in *Casey*, where the Court held, in pertinent part, that:

**WHERE THE CUSTODIAL PARENT IS FIT AND THERE IS NO RISK OF REAL AND SPECIFIC HARM TO THE CHILD, THE DECISION TO RELOCATE THE FAMILY RESTS WITHIN THE CUSTODIAL PARENT'S AU-THORITY SUBJECT TO THE TRIAL COURT'S APPROVAL.**

*Casey*, 2002 OK 70, ¶ 16, 58 P.3d at 769. (Emphasis in original).

¶ 10 In *Mahmoodjanloo v. Mahmoodjanloo*, 2007 OK 32, 160 P.3d 951, the Court reversed a trial court order which sustained the mother's objection to the father's request to relocate the children in his custody from Oklahoma to New York. In doing so, the Court concluded the trial court improperly placed the burden on the father to prove that the relocation was in the children's best interest, rather than requiring the mother to prove the relocation was not in the children's best interest.

¶ 11 *Mahmoodjanloo* noted the cases decided before the effective date of § 112.3 and the potential for conflict between § 112.3 and § 19. However, it declined to resolve any potential conflict, because that issue had not been addressed by the trial court, and it was unnecessary because the trial court failed to follow the clear language of the statute placing the burden of proof on the parent objecting to the relocation. We must address that issue here.

¶ 12 Although we concede the Legislature was within its policy-making power to modify the "real and specific harm" test identified in *Kaiser*, *Abbott*, and *Casey*, that test was based on § 19. In adopting § 112.3, it chose not to expressly repeal § 19, along with the interpretive gloss placed upon it by the Court. Without any real analysis, the trial court in this case concluded the old law was preempted by the new statute.

¶ 13 This issue presents a question of law concerning interpretation of these statutes. Our standard of review on this issue is *de novo*, *In re A.N.O.*, 2004 OK 33, 91 P.3d 646, which standard requires a non-deferential, plenary and independent review of the trial court's legal ruling.

¶ 14 Statutory interpretation is a question of law. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. *Fanning v. Brown*, 2004 OK 7, 85

P.3d 841. Courts will give the words of a statute a plain and ordinary meaning, unless a contrary intention plainly appears. When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed. *City of Durant v. Cicio,* 2002 OK 52, 50 P.3d 218. We must consider the statute as a whole, not just individual provisions. *Bank of Oklahoma, N.A. v. Welco, Inc.,* 1995 OK CIV APP 43, 898 P.2d 172.

¶ 15 We have reviewed § 112.3 and find nothing in that statute indicating the Legislature's intent to *expressly* repeal § 19. Interpreting the trial court's order and ruling at trial,[2] which gave no consideration to § 19, we conclude the trial court determined that § 112.3 repealed § 19 by implication.

■ ¶ 16 However, repeals by implication are never favored, and all statutory provisions must be given effect. Before a repeal by implication may be found, it is necessary for the two legislative acts to be inconsistent and irreconcilable to the extent that they cannot stand together. *Rivera v. District Court of Comanche County,* 1993 OK 63, 851 P.2d 524.

■ ¶ 17 As noted in *Mahmoodjanloo,* 2007 OK 32, ¶ 2, 160 P.3d at 952, "[t]he right of a custodial parent to relocate to a distant new home with his or her child when that move is opposed by the noncustodial parent *is governed* by two different statutes: [§ 19] and [§ 112.3]" (emphasis added), and, *albeit* in dicta,[3] that "both statutes deal with the same subject matter." 2007 OK 32, ¶ 12, 160

P.3d at 955. Under the rule of *in pari materia,* which applies to statutes involving the same subject matter, the Legislature is not presumed, in enacting a new statute, to have intended to repeal by implication an earlier statute. *Strong v. Laubach,* 2004 OK 21, 89 P.3d 1066.

■ ¶ 18 Generally, statutes addressing the same subject matter are to be construed in a manner which reconciles differing provisions and imparts to each of them an intelligent effect. Legislative repeals *may not* be implied. It *will not* be presumed that the Legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, *unless it has done so in express terms.* *Mustain v. Grand River Dam Authority,* 2003 OK 43, 68 P.3d 991.

¶ 19 By its enactment of § 112.3, Father acknowledges the Legislature "somewhat changed the equation," but he does not elaborate how or to what extent. On this point, *Mahmoodjanloo* is instructive. After a detailed discussion of its holding in *Kaiser,* the Court in *Mahmoodjanloo* explained that the Legislature's subsequent enactment of § 112.3

*focuses* on a custodial parent's proposed move of a child more than 75 miles from his or her current primary residence for a period of more than 60 days. The custodial parent is required to give notice by mail at least 60 days before the intended move to all persons entitled to visitation and to include in it, among other things, a statement of the specific reasons for the intended relocation and a proposal for a revised

---

2. When announcing its ruling after trial, the trial court explained its conclusion that in *Casey, Abbott* and *Kaiser,*

[t]he Supreme Court of [Oklahoma] attempted to clarify specifically the burdens and the method by which the Court would make decisions about relocation cases such as this, and they arrived at a rule *that the Legislature was not satisfied with.*

So the Legislature, in enacting [§ 112.3] in 2002, I believe, has attempted to take and create a method for the district courts of [Oklahoma] to make decisions about relocation that is *wholly separate from the standards* set forth in that line of cases, *Casey, Abbott,* and *Kaiser.*

So, in essence, I have *completely discounted and set aside the provisions and statements of*

the Supreme Court of [Oklahoma] *as it relates to the issue of relocation in those particular cases and I have relied solely upon the statutory language contained in [§ 112.3].* ... I'm satisfied ... that there's no case law to date clarifying that statute. It's not been declared unconstitutional and I'm not prepared today to find that it is, in fact, unconstitutional. (Emphasis added.)

3. This description was made during the Court's discussion that consideration of the father's arguments that § 112.3 failed to follow *Kaiser* and should be construed to be in harmony with § 19 were unnecessary in light of the reversal of the relocation denial because the trial court misapplied § 112.3's burden of proof.

schedule of visitation, if any. Upon meeting the statutory requirements, the proposed relocation *is deemed authorized* unless the opposing parent files a proceeding challenging the intended relocation within 30 days after receipt of notice.

*Unlike* the *burden of proof* required under [§ 19] to show evidence that the move would prejudice the rights and welfare of the child, the *new relocation statute* [§ 112.3] requires that a noncustodial parent seeking to restrain the custodial parent from relocating the child must meet *only* a "best interest" burden of proof. *If* a timely objection is filed, the custodial parent has the initial burden of showing that the proposed relocation is made in good faith. *If* that is shown, the burden of proof then shifts to *the noncustodial parent* to show the proposed move is *not* in the best interest of the child. In reaching its decision as to whether the relocation is in the *best interest* of the child, the trial court is required to consider *numerous specific personal factors*. (Footnotes omitted; emphasis added.) *Mahmoodjanloo,* 2007 OK 32, ¶ 6–7, 160 P.3d at 953–954.

¶ 20 The "personal factors" which must be considered in ruling on an objection to relocation are found at 43 O.S.Supp.2002 § 112.3(J)(1)(a)-(h), which provides:

J. 1. In reaching its decision regarding a proposed relocation, the court *shall consider* the following factors:

a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,

b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,

c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,

d. the child's preference, taking into consideration the age and maturity of the child,

e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,

f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,

g. the reasons of each person for seeking or opposing the relocation, *and*

h. *any other factor* affecting the best interest of the child. (Emphasis added.)

These nonexclusive factors, which were not at issue in *Mahmoodjanloo,*[4] clearly express an intent by the Legislature *not only* to broaden the trial court's considerations to include the noncustodial parent's interests, *inter alia,* when deciding whether relocation is in the best interest of a child, *but also* to add uniformity to those considerations in relocation actions. However, as a whole, these factors are neither inconsistent nor irreconcilable with § 19's consideration of "the rights or welfare of the child."

¶ 21 The same may be said with the Legislature's allocation of the burden of proof, found at 43 O.S.Supp.2002 § 112.3(K).[5] Although § 112.3 as a whole adds requirements for notice and consideration of the "factors" discussed above, the party upon whom the burden of proof is placed was *not* significantly changed by the Legislature. Because the noncustodial parent is ultimately responsible for the affirmative showing that relocation of the child by the custodial parent will be *contrary* to the best interest of the child, we conclude the Legislature's enactment of

---

4. See footnote 3.

5. Section 112.3(K) provides that "[t]he relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child."

§ 112.3 does not indicate an intent to repeal § 19 by implication.

¶ 22 We find support for our interpretation in that § 112.3 has no application to a custodial parent's proposed relocation with a child *less than* 75 miles from his or her current residence, therefore making § 19 still applicable under those circumstances. As explained in *Mahmoodjanloo*, § 112.3's factors and burden of proof do not even come into play *unless* the noncustodial parent timely files a written *objection* to the relocation. *See* 43 O.S.Supp.2002 § 112.3(G)(1).[6] Without a timely objection and with no requirement by § 112.3(G) for the custodial parent to obtain further approval from the court, that custodial parent has the *same* presumptive right to relocate as the custodial parent who is relocating less than 75 miles has under § 19.

¶ 23 Finally, our research reveals that § 112.3 is apparently based on the "Model Relocation Act" (the Act),[7] which was prepared by the American Academy of Matrimonial Lawyers for consideration by state legislatures "as a template for those jurisdictions desiring a statutory solution to the relocation quandary." Introductory Comment, 15 J. Am. Acad. Matrimonial Law. 1, 2 (1998). Section 112.3 is identical to the Act, *but for* the addition of the phrase "over 75 miles from the child's primary residence" to the definition of "Relocation"[8] and certain sections not applicable here. However, due to the drafters' lack of agreement on the placement of the burden of proof in relocation disputes, the Act provides three alternatives, each with a two-part burden. *See* Comment to § 407, 15 J. Am. Acad. Matrimonial Law. 1, at 21.

¶ 24 Under Alternative A, the "relocating person," *i.e.*, the custodial parent, has the burden to prove that the proposed relocation is made in good faith *and* in the best interest of the child. Alternative B places on the "non-relocating person," *i.e.*, the noncustodial parent, the burden to prove that his or her objection to the child's relocation is made in good faith *and* that relocation is *not* in the best interest of the child. The only difference between Alternative B and Alternative C, the one identical to that chosen by the Oklahoma Legislature for § 112.3(K), is the first part of the burden, *i.e.*, the relocating person or custodial parent must prove the proposed relocation is made in "good faith." Thus, both Alternatives B and C allocate the same "*not* in the best interest of the child" burden to the noncustodial parent.

¶ 25 The Supreme Court of Louisiana, in which state the relocation statute is also based on the Act, interpreted their legislature's choice of the three alternatives in *Curole v. Curole*, 828 So.2d 1094, 1097 (La. 2002),[9] finding that

> By choosing to adopt Alternative A and *refusing to place on the parent opposing relocation the burden of proving the proposed relocation is **not** in the best interest of the child*, our legislature made a policy determination that relocation is *not* to be automatically considered as being in the best interest of the child. (Emphasis added.)

---

6. Section 112.3(G)(1) provides:
   The person entitled to custody of a child may relocate the principal residence of a child after providing notice as provided by this section unless a parent entitled to notice files a proceeding seeking a temporary or permanent order to prevent the relocation within thirty (30) days after receipt of the notice.

7. We say "apparently" because we find no acknowledgment of the Legislature's reliance on the Act, except for the following statements that "[i]n 2002, the Oklahoma Legislature enacted its relocation statute. The statute utilizes the *Model Relocation Act's* third alternative." (Emphasis added.) *See* Donelle H. Ratheal, "The Relocation Case in Oklahoma: A Guardian *ad Litem's* Perspective," 78 Okla.B.J. 399 (2007).

8. It was the opinion of the drafters of the Act that

   "The difficulties that may be engendered by a relocation are not limited to a move across state lines, or a move of an arbitrarily chosen distance with a state, *e.g.*, 100 miles or 150 miles. A visitation schedule may be significantly affected any time that a move is made by either the custodial or noncustodial party, particularly in heavily urbanized areas." Comment to § 101, 15 J. Am. Acad. Matrimonial Law. 1, at 4–5.

9. Our research reveals one case in which the Rhode Island Supreme Court adopted the factors under the Act for relocation actions. *See Dupre v. Dupre*, 857 A.2d 242 (R.I.2004).

It follows from the *Curole* Court's analysis that, by *choosing* an alternative that places on the noncustodial parent the burden of proof that the proposed relocation is *not* in the best interest of the child, the policy determination would be that relocation is to be automatically considered as being in the best interest of the child. Such an interpretation harmonizes or reconciles § 112.3 with § 19 and gives effect to both provisions. Based on *Mustain v. Grand River Dam Authority,* 2003 OK 43, 68 P.3d 991, we must conclude that to the extent the trial court decided that § 112.3 repealed § 19 by implication, it erred. Considered together, these statutes continue to recognize a preference for allowing the custodial parent place the residence of the children where he or she thinks best.

### Application of § 112.3

¶ 26 Father alleges the trial court misapplied § 112.3 in rejecting his requested relocation. He specifically argues that (1) the primary reason for the rejection, "the detrimental effect on [Mother's] frequency of visitation," is contrary to the evidence and existing law, and (2) the trial court improperly relied on "the change in the frequency of visitation" and "the speculative impairment of [Mother's] relationship [with the children] to weigh against relocation" when considering "almost every factor of [§ ] 112.3 against [Father], without support or adequate evidence." As a result, Father argues the trial court abused its discretion.

¶ 27 Before proceeding with Father's insufficiency of the evidence argument, we must determine precisely what § 112.3(J)(1) requires the trial court to do when deciding relocations requests. Mindful of the previously explained rules of statutory interpretation, we conclude the plain and unambiguous language of § 112.3(J)(1), specifically the phrase, "the court *shall consider* the following factors," and the use of the conjunction "*and* " after the next-to-last fac-

tor, § 112.3(J)(1)(g) (emphasis added), instead of the disjunction "or" as used in § 112.3(J)(2),[10] mandates that the trial court consider all of the factors, (a)-(g), which, together with the specific topics described therein, clearly indicates the Legislature's intent that factors (a)-(g) are *particularly relevant* in relocation actions. Further, the legislative intent to give the trial court discretion to consider other *relevant* factors for the best interest test is found within the plain and unambiguous language of the last factor, § 112.3(J)(1)(h), which provides, "*[a]ny other* factor affecting the best interest of the child." (Emphasis added.) Similarly, discretion is given to consider other relevant sub-topics as a result of the emphasized phrase in § 112.3(J)(1)(f), "whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, *including but not limited to* financial or emotional benefit or educational opportunity." (Emphasis added.) Although the Legislature expressly mandated under 43 O.S.Supp.2002 § 112.3(J)(2) that the court "may not" either "give undue weight" to a prejudgment order allowing relocation or "consider" declarations by the custodial parent that he or she will not relocate if the request is denied, nothing in § 112.3(J), or in § 112.3 as a whole, authorizes or implies that any one of the factors is dispositive or should be given more weight than the other factors. *Curole v. Curole,* 828 So.2d 1094, 1097 (La.2002). In other words, when applying the best interest test under § 112.3(J)(1)(a)-(h), the trial court is to consider and weigh all the evidence, if any, relevant to the specific topic for each factor and decide whether each factor weighs either "in favor of relocation," "against relocation," or is neutral.

¶ 28 Pursuant to the burden of proof mandated in § 112.3(K), however, this best interest test or balancing of the relocation factors need not occur unless the trial

---

**10.** Section 112.3(J)(2) provides that "[t]he court may not"

    a. *give undue weight* to the temporary relocation as a factor in reaching its final decision, if the court has issued a temporary order authorizing a party seeking to relocate a child to move before final judgment is issued, *or*

    b. *consider* whether the person seeking relocation of the child has declared that he or she will not relocate if relocation of the child is denied. (Emphasis added.)

court has determined the relocating parent has carried his or her burden to prove that "the proposed relocation is made in good faith." If not, nothing further is required, but if successful, the burden shifts to the non-relocating parent "to show that the proposed relocation is *not* in the best interest of the child," which, as explained above, must be demonstrated by presenting evidence relevant to § 112.3(J)(1)'s factors and which must *affirmatively* demonstrate that the relocation is *contrary* to the best interest of the child. For the non-relocating parent to successfully carry his or her § 112.3(K) burden, the weight of the factors "against relocation" must always exceed the weight of the factors "in favor of relocation." However, relocation must be granted if the weight of the factors "in favor of relocation" are either equal to *or* greater than the weight of the factors "against relocation."

¶ 29 In this case, the trial court specifically found, pursuant to § 112.3(K), that "[t]he Court is satisfied that the *proposed relocation is being sought by [Father] in good faith* but specifically finds, after application of the totality of the statutory factors, that said relocation is *not in the best interests* of the minor children." (Emphasis added.) With the above steps in mind, we must determine if the trial court properly applied § 112.3(J)(1)(a)-(g).[11] For ease of comparison, each § 112.3(J)(1) factor applicable here will be italicized and quoted in full, then followed by (1) the trial court's findings of facts and/or analysis for each factor, (2) discussion of the relevant facts based on our review of the record, and lastly, (3) our conclusion.

¶ 30 Before proceeding, we note that as in custody and visitation matters where the paramount consideration is the best interest of the child, we will review the trial court's decision on this issue and reverse only if it is contrary to law or against the clear weight of the evidence. *See Gorham v. Gorham,* 1984 OK 90, 692 P.2d 1375.

Subsection (a)

¶ 31 *[T]he nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life.*

¶ 32 The trial court found:

The children have a close relationship with the father. He has been the primary caretaker and sole custodian since November 24 of 2003. The children are also close to mother due to her religious exercise of visitation despite the significant roadblocks to free exercise of visitation. The siblings have remained together. Any relationships they may have with their step-siblings are minimal. The children have strong active relationships with their grandparents and step-grandparents. They have grandparents and step-grandparents in each community. [M.M.] apparently has at least one close friend in Guymon. [C.M.] has friends in Guymon.

¶ 33 The record demonstrates Father gave up a much higher salary to care for and have more time on the weekends with his children, M.M., an almost 10 year old boy, and C.M., a seven year old girl, and it is undisputed that he is involved in every aspect of the children's lives, including education, church, sports, and recreation. Despite Mother living in the same town with her husband, who together have no children, the record demonstrates Mother's involvement in the children's lives, *outside* of her visitation, is minimal, *i.e.,* met one time with [C.M.'s] teacher, knew about but elected not to attend any of the children's parent-teacher conferences, on this record attended only one soccer game, and during the past year, picked them up at school several times each week and kept them until 5:30 p.m.

¶ 34 Mother never disputed that Father is a fit parent and admitted that her lack of involvement in the children's lives is because she trusts his decisions. More importantly, the record demonstrates that the trial court's

---

11. We do not address subsection (h). The trial court specifically denied considering "other factors," and neither party has suggested we consider one not already encompassed within the other 7 factors listed in the statute.

finding regarding "significant roadblocks to free exercise of visitation" were created by Mother. She chose to give up joint custody to remain with her current husband who physically abused C.M., who was only 3 years old when the abuse occurred. For the past four years, she voluntarily reduced her visitation *from* 2 full weekends per month (Friday and Saturday overnights) *to* 2 weekends, with only 1 overnight during the months she works nights, which choice she admits was to take a more lucrative job that required alternating day and night shifts every four weeks.

¶ 35 The trial court basically gave no consideration or weight to this evidence or the presumption that a fit parent acts in the child's best interest. The trial court's findings concerning two groups of "other significant persons" in the children's lives, *i.e.*, the minimal relationship with their step-siblings and the presence of the grandparents and step-grandparents in both communities, are supported by the record but add no weight in favor of Guymon or against relocation.

¶ 36 We reach the same conclusion about the trial court's finding that the children have some friends in Guymon, considering not only their age but also the testimony from the children's stepmother and their Guardian *ad litem*, who both testified neither M.M. nor C.M. have any trouble making friends and had already met friends after only 2 days in Poteau schools. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs heavily in favor of relocation.

### Subsection (b)

¶ 37 § 112.3(J)(1)(b)-*the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,*

¶ 38 The trial court found:
The children have no special needs. The children's developmental stages, educational needs and physical needs *can be adequately met* in either community. Each of the parents need to have a strong, ongoing relationship with the children so that the children's emotional needs may be met. Those emotional needs *cannot be met* if relocation is allowed. (Emphasis added.)

¶ 39 The record does not support the equality of the schools. It is undisputed that the Poteau elementary school which M.M. and C.M. would attend has a better student-teacher ratio than the statewide average and more in-school sport activities, whereas Mother admitted that in the Guymon schools there are both slow-learning and translation issues, *i.e.*, a language barrier between the teacher and non-English speaking students whose needs diminished learning time with the other students and about which specific problem Father testified M.M. had actually complained, and gang and drug problems.

¶ 40 Nor does the record support the trial court's finding that the children's "emotional needs *cannot* be met if relocation is allowed." (Emphasis added.) When asked how the relocation would affect her relationship with the children, Mother only testified that she would not get to see them as often. The other concerns she voiced about the move to Poteau was "I don't think they need to be that far away from me," Guymon is the children's home, and the 8–9 hour drive between Guymon and Poteau for visitation. Mother essentially had no complaints about Father's parenting skills, but admitted her own need for better parenting skills. Father, who had proposed meeting Mother half way for monthly 3–4 day weekends based on Poteau's school calendar and continued liberal telephone visits on cellular phones that would be free for each party, opined that the relationship M.M. and C.M. currently have with Mother would not be any different if they lived 8 hours away. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs neither in favor of nor against relocation.

### Subsection (c)

¶ 41 *[T]he feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the*

*logistics and financial circumstances of the parties,*

¶ 42 The trial court found:

The parties' relative financial circumstances aggravates the detrimental nature of the proposed relocation. The travel will be a financial burden on both families. The overall quality of the relationship between [Mother] and the children cannot be adequately preserved by any modified schedule of visitation crafted by the Court.

¶ 43 Although Father admitted during questioning by Mother's attorney that the increased fuel costs for 450 miles, *i.e.,* half of the 900 mile round trip, "would have an effect on everybody" and further agreed that it was more economical to drive less than a mile from his house over to Mother's house, he later testified that his finances were in good order. Other than the 2004 and 2005 gross income of Mother and her husband, no other evidence or testimony was presented to support a financial burden on both parents. Even if a permissible inference from that evidence, there is no evidence or testimony supporting the trial court's finding that Mother's relationship cannot be preserved by a modification of visitation.

¶ 44 We agree with Father that this finding "is contrary to existing law" because it ignores the Advisory Guidelines authorized for development by the Legislature in 43 O.S.Supp.2004 § 111.1A (C)(2)(f), to address this very type of visitation issue, and which the Administrative Director of the Courts have so developed. *See, e.g.,* Advisory Guidelines–Standard Visitation Schedules with Forms, AOC Form 76 (Revised 9/05), Form 4, *Long* Distance visitation without ability to have monthly contact, equal division of transportation expenses, extended time in the summer, and allowance for additional visitation where the child resides. This very modification was suggested by the Guardian *ad litem,* who did not make a specific recommendation for either parent, but because he had some "safety concerns" about the children being on the road so much under Father's proposal, he suggested giving "extended stays in the summer or some of type of—something else to overcome that."

¶ 45 This finding also ignores undisputed evidence that during the school year, the Poteau school calendar includes at least one "long weekend" each month when the children would not be in school for three or four days in a row, counting weekends. The trial court's finding impliedly expresses an attitude that no attempt would be made to determine an alternate visitation schedule to accommodate Father's statutorily preferred relocation request which was made in good faith. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs slightly against relocation. However, the trial court's failure to consider Advisory Guidelines in order to attempt to fashion an alternative visitation plan which would facilitate the relocation is contrary to law.

### Subsection (d)

¶ 46 *the child's preference, taking into consideration the age and maturity of the child,*

¶ 47 The trial court found:

The children prefer Guymon although their ages mandate that those preferences not be controlling in the Court's decision.

¶ 48 During the Guardian *ad litem's* recommendation to the trial court, he explained he talked to the children over the phone when Father was not there because he felt taking them out of school for an interview after only 2 days in Poteau would be disruptive. He stated that both children indicated they wanted to stay in Guymon with their mother, explaining further that C.M.'s only reason was because she had more friends there. M.M. had two reasons—more friends and he gets in less trouble at Mother's. Regarding the latter reason, the Guardian *ad litem* explained that when he asked M.M. if that was because he spent more time with Father, M.M. agreed it was. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs slightly against relocation.

### Subsection (e)

¶ 49 § 112.3(J)(1)(e)—*whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,*

¶ 50 The trial court found:

The Court has suspicions that [Father] has made efforts to thwart the relationship between the children and [Mother] in the past. However, the evidence before the Court indicates otherwise. The Court specifically finds that there has been no demonstration of an established pattern of [Father] attempting to thwart the relationship of [Mother] with the children.

¶ 51 Although the trial court apparently recognized the lack of evidence that Father had any history of attempting to interfere with Mother's relationship with the children, the trial court acknowledged it had "suspicions," which on this record were unfounded. Considering the trial court's previous conclusion regarding Mother overcoming "significant roadblocks to free exercise of visitation," it seems the trial court was not able to set aside its unfounded suspicions. As noted before, any roadblocks to Mother's visitation were, without dispute, caused by her voluntary decisions to remain married and living with the man who abused her child and to accept a job which provided more financial reward but which decreased her ability to be with her children. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs heavily in favor of relocation.

### Subsection (f)

¶ 52 § 112.3(J)(1)(f)—*whether relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,*

¶ 53 The trial court found:

The evidence indicates that both Poteau and Guymon are appropriate locales for raising these children. There would be no significant enhancement in the quality of life of the children if [Father] were allowed to relocate permanently to Poteau. [Father] enjoys comparable financial opportunities, if not slightly better opportunities, in the Guymon area. The proposed relocation offers the children emotional benefits due to the proximity of a great number of [Father's] extended family. The detrimental effect on the children's relationship with [Mother] greatly outweighs any emotional advantages created by the proposed relocation.

¶ 54 As previously concluded under Factor (b), the trial court's finding that both Poteau and Guymon are appropriate locales is against the clear weight of evidence, not only concerning the problems in Guymon's school system but also Guymon's crime rate, which Mother admitted was a real problem there. However, the trial court announced at the end of his ruling that:

I have *intentionally tried to avoid engaging in weighing factors* regarding whether Guymon or Poteau is the best place for these kids as far as in the sense of *crime rate,* population, all those matters that, really, *quite a bit of time was spent here.* My finding was that these towns, these locations, were both appropriate places for children to be raised. (Emphasis added.)

¶ 55 In addition to this evidence against relocation, the trial court did not consider or gave no weight in favor of relocation to the evidence that: (1) the minor children are Choctaw Indians with roll numbers and will have access to free medical and dental care in the Poteau area, (2) Poteau has a four-year college, and (3) there are abundant lakes for fishing and areas for hunting, both of which are among Father and M.M.'s favorite activities and which they have been less able to do in Guymon. Such evidence not only supports that Poteau is a more appropriate locale than Guymon for Father, M.M. and C.M., but also that the children's "general quality of life" will be enhanced by the relocation.

¶ 56 Regarding the issue of enhancement of Father's "general quality of life," the trial court's finding only considers the "financial aspect," without regard to the evidence that such opportunities in Guymon would require

longer hours, including working on Saturdays, and therefore less time with the children, something he was adamantly against. Limiting that aspect of Factor (f) to financial considerations fails to consider the emotional benefits Father will receive from helping his parents, with whom he, M.M. and C.M. will be able to spend more time. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs heavily in favor of relocation.

## Subsection (g)

¶ 57 § 112.3(J)(1)(g)—*the reasons of each person for seeking or opposing the relocation,*

¶ 58 The trial court found:

[Father] seeks relocation to be with his extended family and to return to his roots. [Mother] opposes the proposed relocation as it will substantially impair her relationship with the children.

¶ 59 The trial court's finding fails to consider Father's undisputed testimony that the primary reason for relocating is because his elderly parents are disabled and need his help. We also think it relevant that a return to Poteau was always part of the parties' plan before they moved to Guymon because both have extended family in the Poteau area, including Mother's mother and stepfather. From the evidence in this record, we can only conclude that the clear weight of the evidence only supports the conclusion that this factor weighs slightly in favor of relocation.

## CONCLUSION

¶ 60 Based upon our analysis of § 112.3(J)(1), we conclude the trial court gave undue weight to several factors, including the effect of the relocation on Mother's visitation schedule and on the parties' finances, and also erred as a matter of law in not considering the Advisory Guidelines to fashion an alternative visitation plan which would allow the relocation. Moreover, several of the trial court's findings are against the clear weight of the evidence presented at the hearing.

¶ 61 Under those circumstances, we must set aside the trial court's order and enter the order the trial court should have entered. Mother did not sustain her burden of demonstrating that the proposed relocation was contrary to the children's best interest, and her objection to Father's relocation must be denied. The trial court's order is affirmed insofar as it denied Mother's Motion to Modify custody. In all other respects, it is reversed. The case is remanded with instructions to deny Mother's objection to Father's proposed relocation, and to make appropriate orders regarding visitation [12] and any adjustments to child support necessitated by those changes as provided by law.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

HANSEN, J., and JOPLIN, J., concur.

---

12. *Casey* concluded a non-custodial parent was entitled to a mandatory adjustment of the visitation schedule where the child is relocated.